UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID BEAR,

     Plaintiff,

v.                                 Case No. 3:19cv4424-MCR-HTC

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS and
DOUGLAS B. UNDERHILL,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on an order re-referring Plaintiff's Renewed Motion for Expedited Hearing to Compel Defendants' Responses to Plaintiff's Public Records Requests (ECF Doc. 74) for a merits report and recommendation fully resolving the motion.  ECF Doc. 126.

## I.  BACKGROUND

Plaintiff David Bear ("Bear") filed a seven-count First Amended Complaint against Defendants, Doug Underhill ("Underhill") and the Escambia County Board of County Commissioners ("ECBCC").  ECF Doc. 18.  Plaintiff sues Underhill in his

individual and official capacity as a commissioner.  In Counts I–IV,[1] Bear alleges Defendants violated Chapter 119 of the Florida Statutes for failing to properly respond to the following three (3) public records request:

1. In April 2019, Bear sent a request to County Attorney Rogers via text message, seeking all documents from Commissioner Underhill related to the County's social media policy and communications from Rogers to individual commissioners regarding the social media policy.[2]  Although Defendants produced some documents in response to the request, Bear claims the production is incomplete.

2. On June 3, 2019, Bear submitted a request via the Commissioner Doug Underhill Facebook page, seeking all Facebook messages between March 1, 2019, and June 3, 2019, mentioning Bear or his family.  Bear did not communicate this request to the ECBCC until August, when his counsel sent a letter to Commissioner Underhill and the ECBCC.[3]  The ECBCC did not produce any documents in response to this request.  Commissioner Underhill responded with some documents two (2) months later.  Bear contends the production is incomplete.

3. In August 2019, Bear submitted a third request via email to Underhill, seeking a complete history of all posts made to the Douglas Underhill Facebook account.  Bear subsequently amended the request to limit it to a history of all posts related to Underhill's public duties, activities, and work as a county commissioner.  In June 2020, Underhill produced to Bear a flash drive with several thousand pages of documents; however, based on the bates numbers, approximately 24,000 pages had been removed.  Defendants

---

[1] In Counts V–VII, Bear alleges Defendants violated Plaintiff's First Amendment constitutional rights by preventing Plaintiff from seeing or accessing certain Facebook pages.  Those claims are irrelevant to this report and recommendation.

[2] The County adopted a Technology Policy on August 20, 2009, which prohibited commissioners from discussing county business on social networking sites but allowed for commissioners to post a story or comment on social media under the commissioner's actual name as long as no other commissioner had also posted a comment or response to the same article or issue.  The Policy also required the County to retain a copy of the post.  The Policy was dropped by the ECBCC on or about May 16, 2019.

[3] The request was not limited to County matters sent in Underhill's capacity as a commissioner, or related to Underhill's duties as a commissioner.  Thus, the request is not one for public records.

argue the removed pages are not public records.  Those 24,000 pages are at the heart of the motion to compel and Counts I-IV.

As relief on those counts, Plaintiff seeks an accelerated hearing, a declaration Defendants violated Chapter 119, an order requiring immediate compliance and an award of fees and costs.  ECF Doc. 18.  Similarly, as relief in Plaintiff's renewed motion for hearing and to compel, Plaintiff seeks an expedited hearing, an order compelling the production of the public records requested, and an award of fees and costs.  ECF Doc. 74 at 9.

Under Florida Statute 119.11 of the Florida Public Records Act, when an action is filed to enforce the provisions of Chapter 119, the court in which the action is filed "shall set an immediate hearing," to determine whether records should be produced.  Fla. Stat. § 119.11.  Thus, the undersigned granted the motion for hearing and held an evidentiary hearing on February 1, 2021.[4]  After considering the evidence presented at the evidentiary hearing, the parties' written submissions (ECF Docs. 83, 84, 85, 87, 88, 89, 90), and conducting an *in camera* review of over 24,000

---

[4] Attending the hearing were attorneys J.J. Talbot and Erik Figlio, representing Bear, who was also in attendance; attorney Joe Hammons, representing the ECBCC and Commissioner Underhill in his official capacity, and Charles Peppler, as representative for the ECBCC; and attorneys Ed Fleming and Matthew Bush, representing Underhill, in his individual capacity, who was also in attendance.  The following witnesses testified at the hearing:  Plaintiff David Bear; Mary Grace Rahm, an attorney at Clark Partington who was hired by the ECBCC to retrieve information from the Underhill Facebook pages; County Attorney Alison Rogers; Kristin Hual, an associate attorney for the County; and Defendant Commissioner Underhill.

pages of downloaded messages and posts from Facebook, the undersigned entered an order granting the motion to compel.  ECF Doc. 93.

Defendants objected to the undersigned's order.  In the ECBCC's objection[5], the ECBCC disagreed with the undersigned's definition of a public record and also her finding that the ECBCC's counsel had not reviewed the documents at issue prior to determining they were not public records.  ECF Doc. 98.  Underhill, in his individual capacity, also filed an objection, arguing, among others, that the order should have been issued as a report and recommendation (and thus reviewed *de novo*) because the undersigned's determination of what constitutes a public record is dispositive of Counts I-IV.  ECF Doc. 99.

On September 8, 2021, the District Judge determined Defendants' objections were moot on two grounds.  ECF Doc. 126.  First, Underhill already produced documents identified by the undersigned as constituting public records; thus, even if the District Judge were to sustain Defendants' objections, it would have no practical import.  Second, the District Judge agreed the undersigned's public records determination was partially dispositive of the claims in Counts I and IV, and thus Plaintiff's motion to compel really sought a merits determination.  Thus, the District Judge found Defendants' objections to be moot and subject to renewal pending this

---

[5] This objection was filed on behalf of the ECBCC and Underhill, in his capacity as commissioner.

report and recommendation.  Also, the District Judge referred the motion to compel

back to the undersigned "to resolve the motion in full."  ECF Doc. 126 at 4.

## II.    THE FLORIDA PUBLIC RECORDS LAW

The people's right to public records is derived from Article I, Section 24(a) of

the Florida Constitution, which provides:

> Every person has the right to inspect or copy any public record made or
> received in connection with the official business of any public body,
> officer, or employee of the state, or persons acting on their behalf, except
> with respect to records exempted pursuant to this section or specifically
> made confidential by this Constitution.

That constitutional provision is implemented through Chapter 119 of the Florida

Statutes, known as the Florida Public Records Act.  *See* Fla. Stat. § 119.01 ("It is the

policy of this state that all state, county, and municipal records are open for personal

inspection and copying by any person.  Providing access to public records is a duty

of each agency.").

Section 119.011 defines "public records" as "all documents, papers, letters,

maps, books, tapes, photographs, films, sound recordings, data processing software,

or other material regardless of the physical form, characteristics, or means of

transmission, made or received pursuant to law or ordinance in connections with the

transaction of official business by any agency."  Fla. Stat. Ann. § 119.011(12).

In *Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc.*, 379 So. 2d 633

(Fla. 1980), the Florida Supreme Court added context to that definition and held that

"a public record, for purposes of section 119.011(1), is any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type." *Shevin*, 379 So. 2d at 640. The court explained that this was in contrast to "materials prepared as drafts or notes, which constitute mere precursors of governmental 'records' and are not, in themselves, intended as final evidence of the knowledge to be recorded."[6] *Id.*

The parties do not disagree it is the content rather than the medium in which a record is created or transmitted that determines whether it is a public record. The parties, however, disagree as to what constitutes "official agency business." Defendants argue Underhill's posts and communications on Facebook, even those sent to a constituent or relating to matters that may involve the ECBCC or come before the ECBCC, are not the "official business" of the "agency" because the ECBCC did not specifically authorize Underhill to create the record or speak on its behalf.

Specifically, the ECBCC argues in its post-hearing brief that because individual commissioners "do not have the authority to act on behalf of the ECBCC

---

[6] The documents at issue in *Shevin* were papers belonging to an independent consulting firm hired to conduct a nationwide search for applicants for the position of managing director for the Jacksonville Electric Authority. After examining the documents at issue, the court concluded that "letters, memoranda, resumes, and travel vouchers" were public records, but that the consultant's handwritten notes "are merely preliminary materials to aid the consultant when he later formalized knowledge gained during the interview." *Id.* at 641.

without a grant of authority by the collective body of the ECBCC," only those posts which were "'prepared, owned, used, or retained' within the scope of Douglas Underhill's authority as an 'agent' of the ECBCC" are public records.  ECF Doc. 89 at 3.  Thus, the ECBCC posits that the test is "whether the posts at issue were made or received by Underhill in an agency capacity furthering the interests of the ECBCC" as opposed to "posts related to Underhill's communications and opinions regarding matters of public importance."  *Id.* at 4.  According to the ECBCC, as long as Underhill is "acting on behalf of and furthering the interests of the ECBCC," then the post is a public record.  *Id.*  However, "records recreated by a commissioner related to that commissioner's political interests" are not public records.  ECF Doc. 98 at 5 (objection to order).

Similarly, Underhill argues that because the posts at issue were maintained "by an individual Commissioner without direction, or authorization, of the agency" and, in fact, in contravention of "the agency's rule [forbidding] Commissioners from communicating with constituents on Facebook," they are not public records.  ECF Doc. 90 at 3, 6.  Underhill argues the Facebook communications at issue "were, at the very most, precursors to potential action by the agency by a Commissioner who clearly had no authority to act on behalf of the agency, or to speak on behalf of the agency, for a single view expressed on Facebook."  ECF Doc. 90 at 19.

Bear, on the other hand, argues any social post or message sent or received by Underhill that has anything to do with County business or that falls under a duty of a commissioner constitutes a public record, regardless of whether it was posted on Underhill's personal Facebook page or the Commissioner Underhill page.  This, according to Bear, includes Underhill's opinions on matters to be decided by the ECBCC, involving County business, or involving any of a number of committees Underhill serves on in his capacity as a commissioner.  Bear also argues any posts related to Underhill's 2018 run for commissioner is a public record because Underhill was a commissioner at the time, but agrees posts related to his 2014 run for commissioner are not public records.

Section 119.011(2) defines "agency" as "any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law . . . and any other public or private agency, person, partnership, corporation, or business entity *acting on behalf of any public agency*." Fla. Stat. Ann. § 119.011(2) (emphasis added).  In *Shevin*, the court stated, "[A] business entity is 'acting on behalf of' a public agency if the services contracted for are an integral part of the agency's chosen process for making a decision on the question at hand."  *Shevin*, 379 So. 2d at 635.

Based on *Shevin* and the definition of "agency," the undersigned finds that commissioners, such as Underhill, are persons acting on behalf of the ECBCC when

they are communicating with constituents on County matters involving the ECBCC or to be voted on by the commissioners.  It cannot be credibly disputed that commissioners are an integral part of the ECBCC's decision making process.  Indeed, the ECBCC concedes this fact.  ECF Doc. 98 at 5.  Thus, a commissioner can create a public record regardless of whether the ECBCC specifically authorizes the record to be created.  *See Op. Att'y Gen. Fla. 2007-14*, 2007 WL 788160 (Feb. 27, 2007) (opining that an email sent by a city commissioner in connection to a transaction with official business that is intended to communicate, perpetuate, or formalize knowledge of some type is a public record even though the email contains undisclosed or blind recipients).

In *O'Boyle v. Town of Gulf Stream*, 257 So. 3d 1036 (Fla. Dist. Ct. App. 2018), the court held that "an elected official's use of a private cell phone to conduct public business via text messaging can create an electronic written public record subject to disclosure" if the official or employee "prepared, owned, used, or retained it within the scope of his or her employment or agency."  *Id.* at 1040–41.  According to the court, an official or employee's communication falls "within the scope of employment or agency" when the "job requires it, the employer or principal directs it, or it furthers the employer or principal's interests."  *Id.*

Underhill does not dispute it is part of the scope of his duties as a commissioner to communicate with constituents and provide them with information about matters

involving the ECBCC.  This includes matters which he may be voting on, which will be presented to the ECBCC, or which have already been voted on.  Underhill does not shy away from the fact that he communicates with constituents regarding County business on his Facebook account and believes he has a right to do so.  Thus, while Underhill attempts to distinguish *O'Boyle* because the public official there was a mayor and not a commissioner, the distinction is one without a difference.

Of particular note and relevance to the issues here is Attorney General Opinion 2008-07.  In that opinion, the Attorney General addressed several issues concerning communications with and among commissioners on privately maintained websites, including whether such communications are a public record.  After quoting Chapter 119's definition of  "agency," the Attorney General concluded that "a city council member clearly is subject to the provisions of Chapter 119, Florida Statutes, when making or receiving public records in carrying out official business."  *Op. Att'y Gen. Fla. 2008-07* (Feb. 26, 2008).  The Attorney General went on to state:

> **To the extent that the council member is publicly posting comments relating to city business, this office cannot conclude that such postings are not made in connection with the transaction of official business.**  Accordingly, I am of the opinion that such postings would be subject to the requirements of the Public Records Law.  When considering with the discussion above, it would appear that **the postings and emails of a city council member relating to his public**

**duties would be public records subject to the provisions of Chapter 119, Florida Statutes**.[7]

*Id.*

While Attorney General Opinions are not binding on the courts, the Florida Supreme Court has held that such opinions are "entitled to careful consideration and generally should be regarded as highly persuasive." *State v. Fam. Bank of Hallendale*, 623 So. 2d 474, 478 (Fla. 1993). Thus, the undersigned finds that a post or message on Underhill's Facebook account may constitute a public record if it was created, received, or retained by Underhill in the scope of his duties as a commissioner, relates to a County matter or to Underhill's official duties, and was intended to convey information or knowledge. This is true regardless of whether the ECBCC specifically authorized Underhill to make such a post or comment. To conclude otherwise would contravene the very purpose of the Public Records Act by diminishing the transparency expected for those holding public office in carrying out their official duties.

Of course, not every social media post or message received, sent, or retained by Underhill that simply references or mentions something related to the County is a

---

[7] The Attorney General goes on to find that the council member who creates the public documents through the posted comments and emails is responsible for ensuring that the information is maintained in accordance with the Public Records Law and the policies and retention schedule adopted by the city, rather than the city because the city has no ownership, control, or affiliate with the website. *See* Fla. Stat. 119.07(1)(a) ("Every person who has custody of a public record shall permit the record to be inspected and copied . . . .").

public record.  As the court in *O'Boyle* noted, "employees do not generally act within the scope of employment when they text their spouse about working late or discuss their job on social media." *O'Boyle*, 257 So. 3d at 1041.  Similarly, in *Butler v. City of Hallendale Beach*, 68 So. 3d 278 (Fla. Dist. Ct. App. 2011), the court held that an email sent by the mayor distributing copies of an article she wrote as a contributor to the South Florida Sun Times is not an email "made pursuant to law or in connection with the transaction of official business by the City, or [] in her capacity as Mayor," even though it included as attachments transcripts of a State of the City Address and an article about tax questions raised at a commission meeting. *Butler*, 68 So. 3d at 281.

Because, as the Florida Supreme Court recognized, "it is impossible to lay down a definition of general application that identifies all items subject to disclosure under the act," "the classification of items which fall midway on the spectrum of clearly public records on the one end and clearly not public records on the other will have to be determined on a case-by-case basis." *Shevin*, 379 So. 2d at 640.  In making that determination, however, the Court is guided by the principle that the Public Records Act "must be liberally construed in favor of access." *O'Boyle*, 257 So. 2d at 1040.

### III.    The Court's *In Camera* Inspection

Underhill provided to the Court approximately 24,000 pages of documents, consisting of over 8,000 items or individual .pdfs, for *in camera* inspection.[8]   The documents consist primarily of Facebook Messenger conversations between Underhill and various Facebook Users, some of whom appear to be friends or social acquaintances.   As to those conversations, the documents were produced as single .pdfs based on the Facebook User with whom Underhill was communicating.   In other words, if Underhill and User Jane Doe exchanged a handful of messages over a short period of time, then the .pdf may consist of one page.   If Underhill and User John Doe, however, exchanged numerous messages over the course of a year or more, then the .pdf may consist of hundreds of pages.

Based on the undersigned's review of *each* of the over 24,000 pages, the undersigned finds they include public records which should have been produced.   In the ECBCC's objection to the undersigned's order, the ECBCC states that it "did not

---

[8] The proper procedure for determining whether a record is a public record is for the Court to conduct an *in camera inspection*.  *See, e.g.*, *Shevin,* 379 So. 2d at 640 (concluding documents were public records after examination of papers sealed by circuit judge); *O'Boyle*, 257 So. 3d at 1042; *Times Pub'g Co. v. City of Clearwater*, 830 So.2d 844, 848 (Fla. Dist. Ct. App. 2002), *approved sub nom. State v. City of Clearwater*, 863 So. 2d 149 (Fla. 2003) (affirming dismissal without prejudice to Times seeking an *in camera* review of emails); *Lorei v. Smith*, 464 So. 2d 1330 (Fla. Dist. Ct. App. 1985) ("The exclusive technique adopted by the legislature for the accomplishment of the [Public Records] Act's purposes is judicial intervention."); *Walton v. Dugger*, 634 So. 2d 1059 (Fla. 1993) ("When, as in the instant case, certain statutory exemptions are claimed by the party against whom the public records request has been filed or when doubt exists as to whether a particular document must be disclosed, the proper procedure is to furnish the document to the trial judge for an *in camera* inspection.").

take the position that there were no public records among the approximately 24,000 pages retained by Underhill." *Id.* at 6.  Instead, as the ECBCC explains, it was merely arguing that the "test" to be applied to those 24,000 pages is "whether the posts at issue were made or received by Underhill in connection with furthering the interest of the ECBCC." *Id.*  That is the very test the undersigned used.  As discussed below, the documents designated by the undersigned for production in the prior order were limited to matters that would be addressed by or presented to the ECBCC.  While the messages reflect Underhill's opinions about those official matters – opinions which may be contrary to those of other commissioners, they are certainly more than communications merely reflecting Underhill's "political interests."  ECF Doc. 98 at 5.

Specifically, the undersigned finds Facebook Messenger conversations containing the following content constitute a public record:

(1)     Requests by constituents for Commissioner Underhill to take action or requests from Commissioner Underhill for a constituent to act—this includes, for example, a request from a resident for Commissioner Underhill to look into a matter affecting the District or for Commissioner Underhill to consider voting a certain way on a County matter, as well as requests from Commissioner Underhill for residents to come out in support of a County issue and messages from Commissioner Underhill identifying ways a Facebook User can communicate with;

(2)     General expressions of thanks by residents for Commissioner Underhill's service to the County—this includes, for example a constituent's appreciation for the manner in which Commissioner Underhill responded to an issue;

(3)     Requests for information about County matters from constituents and Commissioner Underhill's response—this includes, for example, a request from a constituent regarding whether District 2 covers certain areas and a request from a business owner on his obligations under the COVID restrictions;

(4)     Expressions of disagreement or complaints by constituents of Commissioner Underhill's position on County matters—this includes, for example, a constituent's discontent due to being blocked from Underhill's Facebook pages after expressing her disagreement with him on a County matter and a constituent's discontent over something Commissioner Underhill said in an ECBCC meeting; and

(5)     Commissioner Underhill's positions and opinions, including his disagreement with constituents, on matters involving the County or to be decided by the County—this includes, for example, Commissioner Underhill's explanation to a constituent about why he voted a certain way on a County matter, what he thinks the ECBCC or its commissioners should do on certain County matters, and actions he plans to take in his role as Commissioner.

While Defendants seek to recast the .pdfs as containing rogue commentary unrelated to "official agency business," a commissioner cannot use his position as both a shield and a sword.   Commissioner Underhill cannot use Facebook to communicate with the public as a commissioner, with the authority and force of that public position, and then seek to prevent such information from being disclosed as a public record under the guise that the ECBCC did not specifically authorize him to make the post or engage in the discussion.  "The mandate to provide access to public records takes precedence over disclosure of information that 'may cause inconvenience or embarrassment to public officials.'"  *Mechling v. City of Monroe*, 222 P.3d 808, 821 (Wash Ct. App. 2009).   Whether the ECBCC approved or sanctioned Underhill's use of social media does not remove the material from the

ambit of a public record.  If it did, any commissioner could conduct County business on social media without fear of violating the Public Records Act.

In *Times Publishing Co.*, the Second District Court of Appeal recognized "[o]ur rapidly expanding digital world . . . has made accessible some types of information that blur the line between public and private information." *Times Publ'g Co. v. City of Clearwater*, 830 So. 2d 844, 848 (Fla. Dist. Ct. App. 2002), *approved sub nom. State v. City of Clearwater*, 863 So. 2d 149 (Fla. 2003).  This is particularly true here because Commissioner Underhill combined communications about County business with personal communications, erecting few, if any, boundaries, between his personal life and his role and duties as a commissioner.  Thus, while some communications with family members or friends are purely personal, some are not and clearly arise out of Underhill's role as a commissioner.

However, the fact that a single .pdf may include both purely personal matters and a discussion about matters relating to the County does not take the entire .pdf out of the ambit of Chapter 119's disclosure requirements.  Likewise, it would be unreasonable to construe an entire .pdf, which may consist of years of conversations between Underhill and the Facebook User, as a "public record" just because one or more conversations within that .pdf are subject to disclosure.  Because many of the .pdfs consist of multiple conversations over a period of time, they cannot be as easily

segregated into neat piles of private versus public matters, such as the case with text messages or emails.

For example, a .pdf which consists of 60 pages and includes conversations that took place in 2013 before Underhill was elected commissioner *and also* conversations in 2018 asking for Underhill to take action as a commissioner, is a .pdf that consists of conversations that constitute a public record and conversations that clearly do not qualify as a public record. In that example, the motion would be granted as to those conversations occurring in 2018 but denied as to those occurring in 2013. The 2013 messages, thus, would need to be redacted from the .pdf before production.

In the undersigned's prior order, ECF Doc. 93, the undersigned divided the documents it reviewed into three (3) categories: (1) those .pdfs which do not contain any information qualifying as a public record under Chapter 119; (2) those .pdfs which constitute public records, as defined herein; and (3) those .pdfs which include a mix of public records and non-public records (i.e., purely personal conversations). The undersigned ordered Defendants to produce documents identified in category number 2.

The undersigned further ordered Defendants to review the documents identified in category 3 and to redact those "conversations" that are purely personal and provide the redacted messages to the undersigned's chambers. Subsequently,

Underhill provided those redacted messages to the undersigned's chambers and the undersigned finds the redacted messages should be produced to the Plaintiffs.[9]

While Underhill argues in his objection to the undersigned's order that the undersigned's definition is overly broad and "does not comport with Florida law," ECF Doc. 99 at 7, that argument is not reflective of the documents the undersigned identified to be public records. As Underhill acknowledges the undersigned deemed only 129 pages of the 24,000 pages (less than 1%) as constituting public records. Moreover, while Defendants concede the only way to determine what is or is not a public record is by reviewing each document at issue; neither Underhill nor the ECBCC has identified which of the 129 documents the undersigned determined should be produced is not a public record.

## IV.    WAS THE FAILURE TO PRODUCE UNLAWFUL

Although the undersigned determined in her prior order that Defendants withheld public records, the undersigned did not make a determination as to whether Defendants' failure to produce those records was unlawful, such that an award of attorneys' fees would be warranted. As the District Judge noted, "[t]he Public Records Act provides a civil action to compel production of public records and allows for an award of attorney's fees on a determination the agency "unlawfully"

---

[9] Because of the pending objection, the undersigned did not enter an order directing Underhill to produce the redacted messages.

refused to disclose a public record." ECF Doc. 126, n. 1 (citing *B&L Serv., Inc. v. Broward Cty.,* 300 So. 3d 1205, 1208-09 (Fla. Dist. Ct. App. 2020)).

A refusal is unlawful and fees should be awarded in two circumstances: "first, when a court determines that the reason proffered as a basis to deny a public records request is improper, and second, when the agency unjustifiably fails to respond to a public records request by delaying until after the enforcement action has commenced." *Off. of State Att'y for Thirteenth Jud. Cir. of Fla. v. Gonzalez,* 953 So. 2d 759, 764 (Fla. Dist. Ct. App. 2007) (finding latter circumstances existed where production was not made until after lawsuit was filed). In 2016, the Florida Supreme Court resolved a district split on whether a finding of bad faith was necessary before fees could be awarded and, siding with the First District, determined that it was not. *See Bd. of Trustees, Jacksonville Police & Fire Pension Fund v. Lee,* 189 So. 3d 120, 123 (Fla. 2016) ("There is no additional requirement, before awarding attorney's fees under the Public Records Act, that the trial court find that the public agency did not act in good faith, acted in bad faith, or acted unreasonably.").

In reaching its holding in *Lee,* the Florida Supreme Court analyzed the Public Records Act's legislative history, noting that prior to 1984, section 119.12 provided that fees would be awarded if the agency "unreasonably refused" to produce public

records. *Id.* at 125. However, in 1984, the statute was amended to allow for fees if the agency "unlawfully refused." *Id.* at 126. As the court stated:

> The change to "unlawfully," on the other hand, eliminated the potential that an award of attorney's fees would be denied just because the public agency acted reasonably in violating the Public Records Act. This is because an "unlawful[ ] refus[al]," by its common definition, encompasses any refusal not 'permitted or recognized by' the Public Records Act or some other law. *See Black's Law Dictionary* 1018 (10th ed.2014) (defining "lawful" as "[n]ot contrary to law; permitted or recognized by law"). The public agency's failure to comply, rather than its good or bad faith in doing so, became the relevant inquiry. The distinction created by section 119.12 is thus between "unlawful [ ] refus[als]" and lawful refusals—not between "unlawful[ ] refus[als]" and reasonable, inadvertent, or good faith refusals that are not, as the trial court stated in this case, "knowing, willful or malicious."

*Id.* at 126.

The undersigned finds the ECBCC did not unlawfully withhold public records. Instead, as the evidence presented at the hearing showed, the ECBCC made a request to Underhill, who was in possession, custody, and control of the records, to produce the requested documents. The ECBCC also spent over $7,700 to pay Clark Partington to assist it in downloading Underhill's Facebook pages. As discussed in the undersigned's order on Plaintiff's motion to compel discovery documents relevant to Plaintiff's first amendment claims, ECF Doc. 116, the ECBCC met its obligation by asking Underhill to produce his Facebook posts. Plaintiff has not shown there was more the ECBCC could do since it did not have access to Underhill's Facebook posts.

Although Underhill's failure to produce raises a closer question, the undersigned finds Underhill also did not "unlawfully" refuse Bear access to public records as to warrant the imposition of fees and costs.  In *New York Times Co. v. PHH Mental Servs., Inc.* 616 So. 2d 27 (Fla. 1993), the Florida Supreme Court was asked to decide "whether a private entity acting on behalf of a public agency is responsible for attorney's fees under section 119.12(1), Florida Statutes (1987), when that entity reasonably and in good faith denies a Chapter 119 request to inspect records because the private entity's status as an agency under the meaning of chapter 119 is unclear." *Id.* at 29. The court determined it was not.  As the court explained, "[i]f it is unclear whether an entity is an agency within the meaning of chapter 119, it is not unlawful for that entity to refuse access to its records." *Id.*

As discussed above, the focus of Underhill's argument against production is that he is not an "agency" and was not authorized by the "agency" to act on its behalf in making any of the social media posts.  While the undersigned finds Underhill's argument unavailing, the undersigned cannot say the argument was wholly unreasonable.  *See id.* at 30 (finding "PHH's uncertainty as to its status as an agency within the meaning of chapter 119 was both reasonable and understandable," and therefore it did not "unlawfully" refuse to produce records).

Accordingly, it is RESPECTFULLY RECOMMENDED:

1.      The Motion to Compel, ECF Doc. 74, be GRANTED as set forth herein and in the undersigned's prior order at ECF Doc. 93.

2.      Underhill be directed to produce the redacted documents it provided to the Court in March 2021.

3.      Plaintiff's request for fees and costs be DENIED because Defendants' failure to produce was not unlawful under Chapter 119.

DONE AND ORDERED this 8th day of October, 2021.

*s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.