UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**DAVID BEAR,**

    **Plaintiff,**

v.                                              Case No. 3:19cv4424-MCR/HTC

**ESCAMBIA COUNTY BOARD
OF COUNTY COMMISSIONERS,
and DOUGLAS B UNDERHILL,**

    **Defendants.**

_____/

## ORDER

Pending is the magistrate judge's Report and Recommendation, ECF No. 128, regarding Plaintiff David Bear's request for a hearing to determine the merits of his state law claims for the disclosure of public records.[1] Bear requested the disclosure of public records, pursuant to Chapter 119, Florida Statutes (the Florida Public Records Act) consisting, in part, of certain Facebook messages to and from Commissioner Douglas Underhill, a Commissioner on the Escambia County Board of County Commissioners (the "Board"). He argues that Underhill's non-disclosure

---

[1] The First Amended Complaint alleges Florida Public Records Act violations against Underhill (Counts I, II, III) and the Board (Count IV) pursuant to state law and First Amendment free speech violations against the Board (Count VI) and Underhill, in his official and individual capacities (Counts V and VII). Bear has voluntarily dismissed his claims for compensatory and punitive damages and has settled with the Board, resulting in the dismissal of Counts IV and VI. The official capacity claim against Underhill (Count V) was excepted from the settlement. This Order addresses only Counts I, II, and III against Underhill, individually.

was unlawful, entitling Bear to an award of costs and attorneys' fees. *See* Fla. Stat. § 119.12. In the report and recommendation, the magistrate judge determined that certain Facebook pages must be disclosed as "public records" pursuant to Florida's public records laws, but recommended no award of attorneys' fees. Both parties object. *See* ECF No. 133 (Underhill Objections), ECF No. 132 (Bear's Objections). Having reviewed the objections *de novo*, the Court adopts the Report and Recommendation in part and reserves ruling on the attorneys' fee issue, which will be determined by separate order.

**Background**

The parties do not object to the Background as stated within the Report and Recommendation, and it is therefore adopted and incorporated here by reference. *See* ECF No. 128 at 1–5. The Court assumes the parties' familiarity with the facts and procedural history of the case but will briefly recite those facts necessary to facilitate a discussion of the objections.

In the First Amended Compliant, Bear requested public records from Underhill's privately owned and maintained social media accounts related to any comments by Underhill about the County's social media policy or the blocking of viewpoints on social media during his tenure in office, Count I. He also requested any comments by Underhill about Bear or his family, Count II, and public records

from Underhill's social media accounts related to his activities and duties as a commissioner, Count III.  Bear moved for an expedited hearing to compel the production of public records and for attorneys' fees on these claims.

The magistrate judge held a hearing on February 1, 2021, and prepared a report and recommendation defining what constitutes a "public record."  The evidence shows that out of approximately 36,000 Facebook pages Underhill reviewed, he produced 12,000 Facebook pages to Bear and reserved the remainder on privacy grounds.  The magistrate judge then reviewed *in camera* the remaining 24,000 Facebook pages and identified 129 pages as public records, which Underhill has now voluntarily disclosed to Bear.  The magistrate judge also identified another group of Facebook pages (the number is not known) containing both public records and personal messages on the same page, which Underhill was directed to redact to remove the personal messages.  Underhill has completed the redaction using the magistrate judge's definition of "public records," and the magistrate judge has reviewed the redactions and determined that these also should be produced.  But, because Underhill disputes the definition used as overly broad, this group of records has not yet been disclosed.  In sum, the magistrate judge identified public records responsive to Bear's requests for purposes of Counts I and III, concluded that Count II (requesting messages about Bear and his family) was not a request for public

Page 4 of 12

records, and further concluded that Underhill's non-disclosure was not "unlawful" within the meaning of the statute, Fla. Stat. § 119.12.  As a result, the magistrate judge recommended no award of attorneys' fees and costs under the statute.

**Discussion**

The district court reviews the disputed portions of a magistrate judge's report and recommendation *de novo*. 28 U.S.C. § 636(b)(1).  The court "may accept, reject, or modify the recommended disposition; receive further evidence; or resubmit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).  Applying *de novo* review, the court examines the legal conclusions reached and independently considers factual issues based on the record.  *See Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

Underhill objects to the definitions of "agency" and "public records" applied by the magistrate judge.

Article I, section 24 of the Florida Constitution and Chapter 119 of the Florida Statutes guarantee access to public records. *See State v. City of Clearwater*, 863 So.2d 149, 151 (Fla. 2003).  The magistrate judge defined "public records" broadly based on the definition stated in Fla. Stat. § 119.011(12)[2] and relevant case law,

---

[2] The statute defines "public records" as "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the

Case No. 3:19cv4424-MCR/HTC

defining public records as "any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type." *Shevin v. Byron, Harless, Schaffer, Ried & Assocs., Inc.*, 379 So. 2d 633, 640 (Fla. 1980). The magistrate judge further relied on the statutory definition of agency, which includes any "person . . . acting on behalf of any public agency," Fla. Stat. § 119.011(2).[3] Additional support was found in a Florida Attorney General Opinion addressing whether a city council member is subject to Chapter 119 when publicly posting comments, which states: "To the extent that the council member is publicly posting comments relating to city business, this office cannot conclude that such postings are not made in connection with the transaction of official business." *Op. Att'y Gen. Fla 2008–07* (Feb. 26, 2008) (also stating, "it would appear that the postings and emails of a city council member relating to his public duties would be public records"); *see also O'Boyle v. Town of Gulfstream*, 257 So. 3d 1036, 1040-41 (4th DCA 2018) (finding that a mayor's text message could be a public record if

---

physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." Fla. Stat. 119.011(12).

[3] The statute defines "agency" as "any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law including, for the purposes of this chapter, the Commission on Ethics, the Public Service Commission, and the Office of Public Counsel, and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency." Fla. Stat. § 110.011(2).

Case No. 3:19cv4424-MCR/HTC

Page 6 of 12

the communication falls within the scope of employment or agency and stating the Public Records Act is to be liberally construed in favor of access).

Applying these definitions to this case, the magistrate judge concluded that the following categories of messages constitute public records: (1) requests by constituents for Underhill to look into or act in a manner affecting the district or to consider voting in a certain way on a County matter; (2) general expressions of thanks by residents for Underhill's service; (3) requests for information about County matters from constituents and Underhill's responses; (4) expressions of disagreement or complaints by constituents over Underhill's position on County matters or something he said in a County meeting; and (5) statements on Underhill's positions and opinions, including disagreements with constituents, on matters involving the County or to be decided by the County, and explanations to constituents on why he voted a particular way or his plans for taking action in his role as a commissioner. ECF No. 128 at 14–15. The magistrate judge found that the list of 129 Facebook pages identified as public records, *see* ECF No. 133–1, met these criteria.

Underhill challenges the definitions applied, arguing that the magistrate judge erred by determining that an individual commissioner, or single member of a collective Board, can be considered an "agency" under Chapter 119. Underhill

contends that the relevant "agency" is the Board, not individual commissioners incapable of acting officially apart from the Board as an entity and maintains he was not authorized to speak for the Board on social media.

Underhill's arguments are belied by the statute, which expressly defines "agency" as including a "person . . . acting on behalf of any public agency." Fla. Stat. § 119.011(2). Also, communications by an official or public employee are "within the scope of employment or agency" if the "job requires it, the employer or principal directs it, or it furthers the employer or principal's interests." *O'Boyle v. Town of Gulfstream*, 257 So. 3d 1036, 1040-41. The Court agrees with the magistrate judge's definition of agency and her conclusion that Underhill's interactions with the public on matters of County concern and involving his duties as a commissioner may be considered as actions on behalf of the agency and an integral part of the Board's decision-making process.[4] *See generally, Miami Herald Media Co. v. Sarnoff*, 971 So. 2d 915, 917 (Fla. 3d DCA 2007) (finding it undisputed that city "Commissioner Sarnoff is an 'agency' for purposes of Chapter 119," citing

---

[4] At the hearing, Underhill acknowledged that as a county commissioner, he has an obligation to turn over public records when requested, even if the messages are on a private phone or computer, ECF No. 132–1 at 149–50; that it is part of his job as a county commissioner to communicate with constituents on matters of public concern; and that one of ways he carries out this job duty is by communicating his opinions to constituents on social media, ECF No. 132–1 at 153.

Case No. 3:19cv4424-MCR/HTC

Fla. Stat. § 119.011(2)); *Op. Att'y Gen. Fla* 2008–07 (Feb. 26, 2008) ("[I]t would appear that the postings and emails of a city council member relating to his public duties would be public records."). The magistrate judge's interpretation is consistent not only with the broad language of the statute but also the interpretation reached by the Florida Attorney General, *Op. Att'y Gen.* Fla 2008–07, which, although not binding, carries persuasive weight. *See State v. Fam. Bank of Hallendale*, 623 So. 2d 474, 478 (Fla. 1993) (stating an Attorney's General opinion "is entitled to careful consideration and generally should be regarded as highly persuasive.").

Underhill also argues that the magistrate judge erred by defining "public records" as including mere opinions, comments, and questions posed to a commissioner and his responses to comments on a social media page. Citing the statutory language—requiring a document to be made or received "pursuant to law or ordinance" or "in connection with the transaction of official business by any agency"—he argues that neither requirement is met. Fla. Stat. 119.011(12). The Court disagrees. Although these messages were not created pursuant to a particular law or ordinance, they were made and received "in connection with" the Board's official business. Underhill acknowledged that he uses his Facebook pages to communicate with, educate, and inform constituents about matters impacting the

County or actions taken by the Board because of his role as a commissioner.[5]  *See, e.g.,* ECF No. 132-1 at 153-54, 155-56.  As the magistrate judge astutely commented:  "Commissioner Underhill cannot use Facebook to communicate with the public as a commissioner, with the authority and force of that public position, and then seek to prevent such information from being disclosed as a public record under the guise that the [Board] did not specifically authorize him to make the post or engage in the discussion."  ECF No. 128 at 15.

Moreover, because "it is impossible to lay down a definition of general application" that would clearly identify all documents subject to disclosure, a case-by-case review is required.  *Shevin*, 379 So. 2d at 640.  Having reviewed the 129 Facebook pages identified as public records, ECF No. 133–1, the Court finds they bear more similarity to letters or memoranda transmitting "knowledge obtained in connection with the transaction of official business," which the Florida Supreme Court has considered "public records," than to hand-written drafts or notes for

---

[5] Underhill also maintains that this broad definition of public records will unleash a parade of horribles, leading to every comment of any legislator being deemed a public record and resulting in burdensome and unworkable disclosure requirements.  The argument does not carry the day because the determination of what constitutes a public record must be made on a case-by-case basis, and here, the comments were related to projects and other matters before the Board or that citizens wanted brought before the Board.  Any adverse consequences from making and receiving this type of communication could have been easily avoided if Underhill had used official County social media sites for public comments related to duties or County business, instead of his privately controlled social media sites.

personal use, which the Florida Supreme Court has considered either personal or mere "precursors" to public records.[6]  *See Shevin*, 379 So. 2d at 640-41.

Underhill references only one Facebook page in particular, by way of example, to support his argument, citing Facebook page 6.[7]  Underhill questions whether a mere compliment to a commissioner for his work with the Board is properly considered within the definition of public records.  Because this comment clearly addressed a particular project or accomplishment of Underhill within the scope of his duties as a member of the Board, as do others like it within the 129 pages identified as public records, the Court cannot conclude that the message was not received "in connection with the transaction of official business by an agency."[8] Fla. Stat. § 119.011(12).

---

[6] *Cf. City of Clearwater*, 863 So. 2d at 155 (holding "personal" e-mails are not "made or received pursuant to law or ordinance or in connection with the transaction of official business" merely because they are located on government-owned computers); *Justice Coalition v. First District Ct. of Appeal Judicial Nominating Comm'n*, 823 So.2d 185, 192 (Fla. 1st DCA 2002) (finding individual commission members' notes to themselves not public records).

[7] In this page, a citizen wrote: "Thank you Doug for all you are doing for Innerarity Island!" Underhill responded:  "Thank you. I think we will be very proud of this work when we are done." ECF No. 133-1 at 6.

[8] Even if mere expressions of citizen gratitude for a job well done on a given issue or project were not considered a "public record," this does not describe all 129 pages identified as public records (all of which have been produced).  As to messages that Underhill was required to redact, he submitted them to the magistrate judge but did not make any argument or objection specific to them. The magistrate judge has reviewed the redacted messages and determined that they too should be produced to Bear as public records.  Absent objection to any particular message, that recommendation will be adopted.

Page 11 of 12

Bear objects to the portion of the Report and Recommendation concluding that Underhill's failure to disclose the public records upon request was not "unlawful" within the meaning of Fla. Stat. § 119.12(1) and thus does not support an award of attorneys' fees.  The undersigned is taking this issue under further advisement and will issue a ruling by separate order.

Also pending is Bear's request to extend the discovery deadline, arguing he has been unable to complete discovery, provide expert disclosures, or depose Underhill until the public records disclosure dispute was resolved.  Underhill objects but filed no written response.  The Court finds good cause to extend the deadlines, as requested, one final time.

Accordingly:

1.  The magistrate judge's Report and Recommendation, ECF No. 128, is **ADOPTED in part** as to Sections I, II, and III, and the Court **DEFERS in part** as to Section IV.  The Court will issue a separate order as to Section IV after fully considering Bear's objection.

2.  Plaintiff's Renewed Motion for Expedited Hearing on Public Records Request, ECF No. 74, is **GRANTED as follows:**   Defendant Underhill is directed to produce the previously redacted public records to Plaintiff Bear within seven (7) days.

3. Plaintiff's Motion and Corrected Motion for Extension of Discovery Deadlines and Request for a Hearing, ECF Nos. 131, 137, are **DENIED in part** as to the request for a hearing, and **GRANTED in part** as to the request to extend deadlines, as follows:

    a. The discovery deadline is extended to May 24, 2022.

    b. Plaintiff's expert disclosures are due by April 11, 2022.

    c. Defendant's expert disclosures are due by April 29, 2022.

    d. Dispositive and *Daubert* motions are due by June 22, 2022.

    e. Mediation must be completed on or before July 5, 2022.

**DONE AND ORDERED** this 1st day of March 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**