## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**DAVID BEAR,**

     **Plaintiff,**

**v.**                          **Case No. 3:19cv4424-MCR/HTC**

**ESCAMBIA COUNTY BOARD**
**OF COUNTY COMMISSIONERS,**
**and DOUGLAS B UNDERHILL,**

     **Defendants.**

_____/

### ORDER

This case arises out of Escambia County Commissioner Douglas Underhill's use of social media to discuss County business with constituents. In the First Amended Complaint, Plaintiff David Bear sued Underhill and the Escambia County Board of County Commissioners ("Board"), seeking to compel the disclosure of public records from Underhill's social media pages under Florida's Public Records Act, *see* Fla. Stat. § 119.01, *et seq*. (Counts I–IV) and also claiming that Underhill blocked him or denied him full access to the social media accounts in violation of his First Amendment free speech rights, *see* 42 U.S.C. § 1983 (Counts V–VII).[1] Through prior orders, Bear's settlement with the County, and stipulations on file,

---

[1] The case was originally filed in state court and removed to federal court on federal question jurisdiction. *See* 28 U.S.C. § 1331.

most of the claims have been resolved.[2]   What remains is Bear's request for an

attorney's fee award on the Public Records Act claims against Underhill (Counts I

and III), for which he seeks partial summary judgment, ECF No. 145; and the

individual capacity First Amendment claim for declaratory and injunctive relief

against Underhill (Count VII), on which Underhill moves for summary judgment,

ECF No. 144.[3]   Having fully reviewed the matter, the Court concludes that Bear is

---

[2] As to the Public Records Act claims against Underhill and the Board, the Magistrate Judge held a hearing and compelled them to provide public records from Underhill's social media pages on Counts I and III (against Underhill) and IV (against the Board). The Court found that the request in Count II against Underhill was not a request for public records, rendering it subject to dismissal as a nullity; and the Court deferred ruling on the claim for attorney's fees as to the Public Records Act claims.  *See* ECF No. 93 (Order on Motion to Compel), ECF No. 128 (Report and Recommendation, recommending compelling production of documents but not awarding a statutory attorney's fee), ECF No. 140 (Order adopting Magistrate Judge's recommendation to compel documents under Counts I and III and deferring on the request for an attorney's fee award).

Subsequently, Bear settled all claims against the Board—the  Public Records Act claim (Count IV) and the First Amendment claims against the Board and in Underhill's official capacity (Counts V and VI).  Bear also expressly abandoned all claims for compensatory and punitive damages and attorney's fees and costs on the First Amendment claim, including the individual capacity claim against Underhill (Count VII).  *See* ECF No. 95 (Notice of Abandonment of Plaintiff's Claims for Compensatory and Punitive Damages in Counts V, VI, VII), ECF No. 108 (Notice of Abandonment of Plaintiff's Claims for Attorney's Fees Against Douglas Underhill in his Individual Capacity in Count VII), ECF No. 123 (Order memorializing abandonment of damages, attorney's fees and costs), ECF No. 138 (Motion to Dismiss/Settlement with Board), ECF No. 139 (Order granting dismissal of Board, Counts IV and VI, not impacting claims against Underhill); ECF No. 148 (Rule 41(a)(1)(A)(ii) stipulation of dismissal as to all remaining official capacity claims against Underhill (Count VI) with each party to bear their own fees and costs).

[3]  Underhill also filed a Motion for Summary Judgment on the official capacity claim in Count V, ECF No. 143.  Bear's settlement with the Board had initially preserved this official capacity claim, but in response to Underhill's summary judgment motion, Bear filed a stipulation of dismissal, signed by all parties, as to all remaining claims against Underhill in his official capacity, ECF No. 148.  Thus, Underhill's motion for summary judgment on Count V, ECF No. 143, is moot.

statutorily entitled to an award of attorney's fees, and Underhill is entitled to summary judgment on the First Amendment claim.

## I.      Background

The record reflects that in 2019, while Underhill was a County Commissioner, he used social media Facebook pages on his personally owned Facebook account to converse with constituents and provide them information on matters involving the Board and County business.  Underhill explained by deposition that he has one overall Facebook account titled "Douglas Underhill," which includes pages titled "Douglas Underhill" ("Underhill page") and "Commissioner Doug Underhill" ("Commissioner page").[4]  As one of five County Commissioners, Underhill had no authority to make County policy on his own, he had no County sponsored or supported social media platform,[5] and he has never been expressly authorized to make Facebook posts on behalf of the Board.  Nonetheless, Underhill acknowledged

---

[4] Underhill also used a separate Facebook page related to his campaign, which is not at issue in this suit.

[5] County policy from 2009 through May 16, 2019, prohibited commissioners from discussing county business on social networking sites but allowed commissioners to post a story or comment on social media under the commissioner's actual name as long as no other commissioner had also posted a comment or response to the same article or issue. The policy also required the County to retain a copy of the post.  ECF No. 128 at 2 n.2.  A separate policy adopted in 2012 prohibited County employees, including commissioners, from conducting County business on personal social media accounts but allowed an official page to be established by approval of the County administrator, ECF No. 35–1.

Case No. 3:19cv4424-MCR/HTC

in testimony, both in a prior hearing and in his deposition, that social media is one of the ways he carried out his duties as a Commissioner.  Underhill further testified that he understood he had an obligation to preserve public records and provide them when requested, even if those records were on a personal computer or personal cell phone.

The Commissioner page, according to Underhill, was intended to serve as an electronic bulletin board on which he could post information about County business that might be of interest to his constituents, and he included a statement to that effect on the Commissioner page. Underhill explained that the Commissioner page is publicly visible to anyone on Facebook but maintained he did not intend to create a public forum open for comments.  He used settings on the administrator's page, namely a profanity filter and also a filter using a list of common words he selected that would hide from public view any comment using a filtered word; however, the comments would not be hidden from the commenter or the commenter's Facebook "friends."[6]  Underhill thought this list of common words would cause all messages to be hidden from view on the Commissioner page so it could function as a bulletin

---

[6] The page setting shows that posts containing the following words were blocked:  "and, the, you, your, it, good, congradulations, congratulations, will, should, won't, wont, commissioner, commission, board, county, this, that, those, they, them."  ECF No. 150–5.

Case No. 3:19cv4424-MCR/HTC

board.  There were posts from Underhill informing users that he would not read their comments because the page was "not a discussion board."  ECF No. 144–2 at 177.

Bear testified by deposition that he was denied full access to the Commissioner page because although he could comment, he could not see the comments of others unless he was their Facebook "friend."   Bear said he was excluded "from being able to engage in dialogue on that page" because he could not see all comments and therefore could not "fully engage in that entire conversation" without being Facebook "friends" with the commenters.  ECF No. 151–1 at 11–12, 29.  Underhill participated in dialogue on the Commissioner page starting in October 2018 when the page was created, and he has commented on other pages using this Commissioner page identity.  *Id*. at 20–21.

Underhill acknowledged that he may not have set up the page as a bulletin board immediately, and posts on the Commissioner page dating from 2018 clearly used filter words and were not hidden from view.  Underhill initially encouraged discussion and acknowledged to users that the Commissioner page was a public record, stating in a post on November 9, 2018:

> The same rules apply here as in public forum.  No attacks.  No profanity.  Stay on topic  One topic per thread . . . Everything here is public record and there is no privacy.  Violations will simply be deleted, just like having your time terminated and being asked to sit down if you violate the rules in public forum.

Case No. 3:19cv4424-MCR/HTC

ECF No. 150–2 at 1.  By email to the County Attorney dated January 19, 2019, Underhill stated that he "continue[d] to run [the] Commissioner Doug Underhill page in accordance with the same rules as public forum, and in fact my detractors use it to sh[ut] down my message on a routine basis, so there is a good body of evidence that I am preserving their 1st amendment rights." *Id.* at 3.

By May 2019, it appears the rules regarding the bulletin board format had changed.  Underhill wrote on the Commissioner page: "I have a couple of lunatics that are losing their minds over the fact that they can't see their comments on my page.  All comments, pro and con, are blocked on this page.  This page exits for me to tell my constituents what is going on."[7]  *Id.* at 217.  Again, one month later in June of 2019, Underhill specifically cautioned users that "[a]ll comments are hidden on this page. I encourage you to share the comment on your page if you want to run commentary on it.  If you want to communicate with me on it, please use [my official email]."  ECF No. 150–4 at 1.  Records show that Bear's comments were hidden from public view on the Commissioner page when he used filter words, as were

---

[7] Underhill later again told people to "stop wasting your time fussing about whether you can see comments.  All comments are blocked on this page which means only you and your friends can see each other's comments.  The page exists to tell you what your representative is doing. Think of it as a press release using modern media."  ECF No. 150–4 at 3.

others.  *See e.g.,* ECF No. 150-7 at 10 (August 2020); ECF No. 150-7 at 17 (July 2020); 150–9 at 19 (November 2019); ECF No. 150–8 at 25 (May 2020).  However, some comments of others were occasionally visible on the page despite the filters, which Underhill was unable to explain but attributed to either a Facebook glitch or his own mistake in thinking a conversation was occurring on a different site.  *See e.g.*, ECF No. 144–2 at 174, 213–14.  Underhill testified that the hidden comments were a function of the Commissioner page general rules, and he denied blocking anyone from the Commissioner page.

Regarding the Underhill page, it was set up as limited for viewing by Underhill's Facebook "friends" but also included a setting allowing public "followers."[8] Underhill characterized this as a personal page, mostly consisting of family pictures and personal conversations, and he said he posts about all kinds of issues on this page, including political and societal issues, and whatever is happening in his life.  He acknowledged that Bear was on a list of persons he had blocked from this page at one time.  There are instances in the Underhill page where Underhill directed the discussion to his Commissioner page or to his official email, informing

---

[8] "Followers" can follow the page holder's public posts while "friends" view the page by default.  ECF No. 144–2 at 229.

Case No. 3:19cv4424-MCR/HTC

the users that this was a personal page and that discussions related to matters that may come before the Board would be reserved for his Commissioner page.[9]

Bear made three public records requests of the County and Underhill, seeking the production or inspection of messages and posts on Underhill's social media pages. Underhill did not respond. The County replied to the requests, but because the social media pages were in Underhill's ownership and under his control, the response was incomplete. Bear then filed suit.[10] Ten months later, Underhill produced 12,000 pages out of approximately 36,000 pages of Facebook records, but continued to maintain that none of his Facebook pages constituted public records because they were personally owned and maintained. Plaintiff filed a motion to compel public records as to the 24,000 pages that were withheld.

The Magistrate Judge held a hearing on Bear's public records request and concluded that for purposes of Counts I, III, and IV, Underhill was acting on behalf of the Board by communicating with constituents on County matters involving the Board, or on matters that would be subject to a vote by the Board, and that those posts or messages were therefore public records that Underhill must disclose, despite

---

[9] *See* ECF No. 133–1 at 1, 7, 9, 10, 12, 13, 33, 38, 39, 48, 54 (pages showing a comment by Underhill directing the discussion to his Commissioner page).

[10] As noted previously, Bear asserted Public Records Act claims against Underhill in Counts I, II, and III and against the Board in Count IV, and First Amendment claims.

Case No. 3:19cv4424-MCR/HTC

being located on social media pages that he considered personal.  The Magistrate Judge found that Count II was not a request for public records.  After inspecting the disputed documents *in camera*, the Magistrate Judge recommended compelling the production of 129 pages from Underhill's Facebook account as public records and another group was identified as a mix of public records and personal messages that Underhill was required to redact.  Underhill complied with the redaction and made no objection to the Magistrate Judge's determination that the unredacted portions were public records.  The Court adopted the Report and Recommendation as to these issues.  *See* ECF Nos. 128, 140.

In the same Report and Recommendation, the Magistrate Judge also recommended not awarding Bear statutory attorney's fees under the Public Records Act, finding that the Board, which did not have access to Underhill's Facebook pages, did not *unlawfully* withhold public records and that Underhill's refusal to disclose records was not unlawful because he questioned his "agency" status in good faith.[11]  The Magistrate Judge determined that Underhill's position, while ultimately unavailing, was not unreasonable, citing *New York Times Co. v. PHH Mental Servs., Inc.* 616 So. 2d 27 (Fla. 1993) (finding a private entity's good faith refusal to disclose

---

[11] In response to the Magistrate Judge's Report and Recommendation, Underhill objected to the judge's definition of "agency" and of "public records."

Case No. 3:19cv4424-MCR/HTC

was not unlawful because its "agency" status was unclear). Bear objected to this portion of the Report and Recommendation, and the undersigned deferred ruling on the issue.

Subsequently, Bear settled with the Board, and summary judgment motions were filed on the remaining claims, which are now ripe and before the Court.

## II.    Standard of Review

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). The moving party bears the burden of establishing that there is no genuine dispute of fact and that the plaintiff has failed to establish an essential element of the claim. *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted). To avoid summary judgment, the nonmoving party must then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for

trial." *Celotex*, 477 U.S. at 324 (internal marks omitted). The mere existence of some factual dispute will not defeat an otherwise properly supported summary judgment motion—there must be a "genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-47). At this stage, the court's role is not to weigh the evidence or determine the truth but to determine whether there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 249.

## III.   Discussion

### A.   Attorney's Fee Request—Florida Public Records Act

Bear moves for partial summary judgment on his claim for attorney's fees under the Public Records Act (Counts I and III). Florida's Public Records Act "is to be construed 'liberally in favor of the state's policy of open government.'" *Morris Pub. Group, LLC v. Fla. Dep't of Educ.*, 133 So. 3d 957, 960 (Fla. 1st DCA 2013) (quoting *Nat'l Collegiate Athletic Assoc. v. Assoc. Press*, 18 So. 3d 1201, 1206 (Fla. 1st DCA 2009)); *see also* Fla. Stat. § 119.01. Doubts as to whether a matter is a public record are to be "resolved in favor of disclosure." *Morris Pub. Group*, 133 So. 3d at 960. Consistent with this policy, the Act provides a reasonable attorney's fee to a prevailing plaintiff, *see* Fla. Stat. § 119.12. The attorney's fee award "is designed to encourage public agencies to voluntarily comply with the requirements of chapter 119, thereby ensuring that the state's general policy is followed" and

making agencies less likely to wrongfully deny proper requests for documents. *State Attorney's Off. of Seventeenth Jud. Cir. v. Cable News Network, Inc.*, 254 So. 3d 461, 463 (Fla. 4th DCA 2018) (quoting *New York Times Co. v. PHH Mental Health Servs., Inc.*, 616 So. 2d 27, 29 (Fla. 1993)).

Specifically, Florida law provides:   "[I]f a civil action is filed against an agency to enforce" the Public Records Act, the Court:

> . . . shall assess and award the reasonable costs of enforcement, including reasonable attorney fees, against the responsible agency if the court determines that:
>
> (a) The agency unlawfully refused to permit a public record to be inspected or copied; and
>
> (b) The complainant provided written notice identifying the public record request to the agency's custodian of public records at least 5 business days before filing the civil action.[12]

Fla. Stat. § 119.12.  At issue is whether Underhill acted "unlawfully" and can be assessed fees as "the responsible agency."   Bear argues the Court previously determined that Underhill met the definition of "agency" by compelling him to produce public records from his social media pages, and therefore his conduct was

---

[12] It is undisputed that Bear provided the requisite notice for purposes of subsection (b). Fla. Stat. § 119.12(b).

unlawful.  Underhill argues that because only "individual capacity" claims remain
at issue he cannot be assessed fees as an "agency."

The Public Records Act defines "agency" as "any state, county, district,
authority, or municipal officer, department, division, board, bureau, commission, or
other separate unit of government created or established by law . . .  and any other
public or private agency, person, partnership, corporation, or business entity acting
on behalf of any public agency."  Fla. Stat. § 119.011(2).  The Act requires a person
who has custody of public records to acknowledge requests for inspection and
respond in good faith to determine whether such a record exists and its location.  Fla.
Stat. § 119.07(1)(c).  A delay in making public records available is only permissible
"under very limited circumstances," such as the time necessary to make "a
reasonable effort to determine" whether the records exist, Fla. Stat. § 119.07(1)(c),
or are exempt, Fla. Stat. §§ 119.07(1)(d)-(e).  *Promenade D'Iberville, LLC v. Sundy*,
145 So. 3d 980, 983 (1st DCA 2014).  And the "only challenge permitted by the Act
at the time a request for records is made is the assertion of a statutory exemption."[13]

---

[13] If any person who has custody of a public record contends that all or part of the record
is exempt under one of the enumerated statutory exemptions from disclosure, the basis for the
exemption must be stated; the failure to disclose based on a statutory exemption is not unlawful.
See Fla. Stat. § 119.07(1)(d)-(e); *see also State Attorney's Off. of Seventeenth Jud. Cir. v. Cable
News Network, Inc.*, 254 So. 3d 461, 463 (4th DCA 2018) (school district's refusal to disclose
certain video footage taken by security cameras at Marjory Stoneman Douglas High School was
based on the "security plan" exemption from disclosure contained in § 119.071(3)(a), so even

*The Tribune Co. v. Cannella*, 58 So. 2d 1075, 1078-79 (Fla. 1984). "[W]hen a court determines that the reason proffered as a basis to deny a public records request is improper," the refusal is "unlawful." *B&L Serv., Inc. v. Broward Cnty.*, 300 So. 3d 1205, 1208 (Fla. 4th DCA 2020) (internal quotations omitted). In sum, an attorney's fee award is required "for unlawful refusal to provide public records under two circumstances: first, when a court determines that the reason proffered as a basis to deny a public records request is improper, and second, when the agency unjustifiably fails to respond to a public records request by delaying until after the enforcement action has been commenced." *Off. of State Att'y for Thirteenth Jud. Cir. of Fla. v. Gonzalez*, 953 So. 2d 759, 764 (Fla. 2nd DCA 2007).

The Florida Supreme Court has explained that the attorney's fee statute contains no good faith or reasonableness exception. *See Bd. of Trustees, Jacksonville Police & Fire Pension Fund v. Lee*, 189 So. 3d 120, 128 (Fla. 2016). Instead, a prevailing party is entitled to a statutory attorney's fee award "under the Public Records Act when the trial court finds that the public agency violated a provision of the Public Records Act in failing to permit a public record to be inspected or

---

though the court ultimately required the records to be disclosed, the nondisclosure based on an exemption was not "unlawful"). It is undisputed that no statutory exemption was claimed in this case.

copied."[14]  *Id.*  In so ruling, the court in *Lee* distinguished an earlier case, *New York Times Co. v. PHH Mental Health Servs., Inc*., 616 So. 2d 27, 29 (Fla. 1993), as not based on a "good faith" standard but rather  on a private entity's uncertainty of its agency status.  Because the private entity "was not denominated a public agency by law," a judicial determination was required to decide "whether it was acting on behalf of a public agency."  *Id.*  The *PHH* court explained:

> If it is unclear whether an entity is an agency within the meaning of chapter 119, it is not unlawful for that entity to refuse access to its records.  Conversely, refusal by an entity that is clearly an agency within the meaning of chapter 119 will always constitute unlawful refusal.

*Id.*; *see also Lee*, 189 So. 3d at 128 (explaining that "[w]hile there are statements in *PHH* that may have inadvertently resulted in confusion for the district courts of appeal," grafting a good faith or honest mistake exception into the "unlawfully refused" term when a unit of government unquestionably meets the agency definition and refuses to disclose the record would cause the statute to be "seriously diluted").

---

[14] The Florida Supreme Court explained in *Lee* that while a failure to respond in good faith to a public records request in violation of Fla. Stat. § 119.07(1)(c) may itself constitute a violation of the Public Records Act requiring an attorney's fee award, that does not import a good faith or reasonableness *requirement* into Fla. Stat. § 119.12, "which does not contain any such language." 189 So. 3d at 128.

Case No. 3:19cv4424-MCR/HTC

On *de novo* review of Bear's objections to the Report and Recommendation and the summary judgment arguments, the Court respectfully rejects the Magistrate Judge's conclusion that Underhill's withholding of these public records was not unlawful and that his status as an "agency" was reasonably uncertain.   To the contrary, no reasonable uncertainty existed as to Underhill's status.    As a Commissioner, he was a public official, a county authority, a member of the Board, and, as already determined, "a person acting on behalf of an agency" when he created public records on his social media pages, whether he was authorized by the Board to do so or not.  Underhill acknowledged that his communications were in furtherance of his duties as a Commissioner.  No statutory exemptions were claimed, and Underhill's delay, which lasted well after Bear had filed suit, cannot be attributable to a reasonable or good faith attempt to locate the records.[15]  Bear was forced to file suit to obtain them, and the Court compelled their disclosure.  Period. End of story.

---

[15] Even assuming Underhill was subjectively concerned about not disclosing personal messages, he made no timely response and the statute includes no reasonableness inquiry that would preclude a finding that the conduct was unlawful.  Underhill does not even argue that the nondisclosure was not "unlawful."

Case No. 3:19cv4424-MCR/HTC

In response to Bear's motion for fees, Underhill argues only that the issue is moot because Bear has settled and dismissed all official capacity claims.[16] Effectively, Underhill is arguing that an attorney's fee award is not proper in this case because as an individual, he cannot be the "responsible agency." The undersigned disagrees because clearly he was an elected commissioner and thus could wear two different hats depending on his task and his speech at the time. He received a public records request for these records, which have been found to be "public," and therefore, he was acting as an agent of the County in making these statements on social media, regardless of any good faith belief otherwise; there is no good faith exception that applies to an elected public official. *See Lee*, 189 So. 3d at 128. And as noted, the definition of "agency" includes a person acting on behalf of an agency. Underhill was sued in Counts I and III—without any express reference

---

[16] The "individual capacity" versus "official capacity" terminology is discussed commonly in the § 1983 context, where the law provides that an "individual capacity" suit holds an individual liable for his or her unconstitutional conduct committed under color of state law, whereas "[a] suit 'against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" *Attwood v. Clemons*, 818 F. App'x 863, 871 (11th Cir. 2020) (Grant, J., concurring) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). To determine the capacity in which a person is sued, courts consider whether the complaint requests relief against the office held or against the individual himself. *Id.* Here, the complaint clearly requested relief under the Public Records Act against Underhill, who was the individual in custody of the public records, which were created through his duties—not relief against the office he holds.

to capacity—as the person who had custody of the public records requested and who refused to respond to the public records request. *See* Fla. Stat. § 119.07(1)(a) (stating it is the obligation of "[e]very *person* who has custody of a public record" to permit inspection and copying (emphasis added)).  Because the records were withheld unlawfully, the Act mandates an assessment of reasonable attorney's fees against the "responsible agency," and "agency" is broadly defined to include a county authority, board, commission, or private entity or person acting on behalf of the agency. Because Underhill meets the definition and therefore is "the responsible agency," an award against him is mandated by statute. *See generally, Wood v. Marston*, 442 So. 2d 934, 938 (Fla. 1983) (finding the president of the University of Florida was an "agency," even though higher education institutions are not specifically identified in the definition of agency; also noting in that case, the defendant had been relieved of any personal liability for attorney's fees pursuant to a stipulation); *Miami Herald Media Co. v. Sarnoff*, 971 So. 2d 915, 917 (Fla. 3d DCA 2007) (finding it undisputed that city "Commissioner Sarnoff is an 'agency' for purposes of Chapter 119," citing Fla. Stat. § 119.011(2)).

## B.    Individual Capacity Free Speech Claim—First Amendment

Underhill moves for summary judgment on the individual capacity First Amendment claim in Count VII.  In this claim, Bear alleged that Underhill, in his

individual capacity, acted under color of state law by operating social media pages

as public fora using the apparent authority of his office and blocked or restricted

Bear's access to the pages in violation of his First Amendment free speech rights.

Bear seeks declaratory and injunctive relief.[17]  Underhill moves for summary

judgment, asserting there is no state action because as one individual member of a

five-member County Commissioner Board, he had no authority to act for the Board,

and he argues there is no state action and no evidence of content-based restrictions

or that Bear's speech was excluded or censored based on content.[18]

---

[17] As noted, Bear has abandoned his claims for compensatory and punitive damages as well as attorney's fees on this claim.  The Court takes judicial notice of the fact that Underhill is no longer an Escambia County Commissioner.  Therefore, his claim for injunctive relief is moot.  *See Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001) ("A claim for injunctive relief may become moot if: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations.") (internal marks omitted).  However, the Supreme Court has recently held that declaratory relief and nominal damages (even if not requested) are available to remedy a past constitutional violation; therefore, the declaratory relief claim is not moot.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (holding nominal damages award by itself can redress a past injury such that First Amendment claim was not moot).

[18] Bear argues the motion should be rejected out of hand for its technical deficiencies, but the Court does not find it so deficient as to be denied on technical grounds.  The motion includes some citations to the record and Underhill incorporated the facts and arguments from his motion for summary judgment on the official capacity claims, ECF No. 143, as well as his motion to dismiss and the Magistrate Judge's original report and recommendation on his motion to dismiss, which the undersigned rejected.  The Court has considered the other summary judgment motion and the case record but the vague incorporation of "facts" and arguments made in a motion to dismiss or a rejected report and recommendation are not persuasive in the summary judgment context and have therefore not been considered.  It remains the Plaintiff's burden to establish a genuine dispute of material fact as to each element of the claim.  *See Celotex Corp.*, 477 U.S. at 322-23.

Section § 1983 allows a suit for the intentional deprivation of a constitutional right under color of state law.  42 U.S.C. § 1983.  "A successful section 1983 action requires that the plaintiff show []he was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty., Ga*., 103 F.3d 1510, 1513 (11th Cir. 1997).  The First Amendment, in relevant part, guarantees that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I, and this right is protected against state action through the Fourteenth Amendment, U.S. Const. amend. XIV.  It is well-established that "the Free Speech Clause prohibits only governmental abridgment of speech," not "private abridgment of speech," and therefore, as in every § 1983 claim, state action is essential to the claim.  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).  The "color of state law" and "state actor" "requirements are treated as the functional equivalent of one another and can be analyzed under the same framework.  *Attwood v. Clemons*, 526 F. Supp. 3d 1152, 1164 (N.D. Fla. 2021) (citing *United States v. Price*, 383 U.S. 787, 794 n.7 (1966)).  "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law," but he also can be said to have acted under color of state law when abusing or misusing the position given to him by the state or local government.  *West v. Atkins*, 487 U.S. 42, 49 (1988).  State action also can be found by "if, though only if, there

is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotations omitted).

When the government creates a public forum for speech, the First Amendment ordinarily prohibits the government from excluding "speech or speakers from the forum on the basis of viewpoint, or sometimes even on the basis of content."[19]  *Halleck,* 139 S. Ct. at 1930.  Conversely, "when a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor."  *Id.*  In the social media context, to determine whether a government official's social media conduct constitutes state action, "courts have focused on two main factors:  namely, 1) whether the official uses the account in furtherance of their official duties, and 2) whether the presentation of the account is connected with the official's position."

---

[19] Underhill is sued in his individual capacity, but the Court has found that he was carrying out his duties as a Commissioner using his personally owned Facebook pages, and he therefore made public records using his public office and title as Commissioner.  Thus, the undisputed record shows that in administering at least portions of his Facebook pages, Underhill was acting as a state actor/under color of law, despite the fact that he did not have explicit authority to make policy or decisions on behalf of the Board.

*Attwood*, 526 F. Supp. 3d at 1166 (citing *Charudattan v. Darnell*, 834 F. App'x 477, 481 (11th Cir. 2020)).

Underhill contends that because he had no authority to act according to state law except as part of the collective legislative body of the Board, he could not be said to be a state actor or to have acted under color of state law in establishing or maintaining his Facebook pages.  The Court disagrees. Courts have rejected the contention that a single legislator can never be considered as acting under color of state law.  *See Attwood*, 526 F. Supp. 3d at 1164–65 (stating, "[c]ontrary to Defendant's assertion, Defendant's status as a state legislator is not a magic pill that immunizes him from state action analysis"); *see also Davison v. Randall,* 912 F.3d 666, 680 (4th Cir. 2019), as amended (Jan. 9, 2019) (the chair of a county board of supervisors was found to be a state actor when establishing the "Chair" Facebook page and banning a citizen's access).  The Fourth Circuit explained that where "a defendant's status as a public official" allows him "to execute a challenged action in a manner that private citizens never could have, then the action also is more likely to be treated as attributable to the state." *Davison,* 912 F.3d at 680 (noting "Chair" Facebook page was state action because it was used as a "tool of governance" and was intentionally opened for public discourse).

Here, two distinct Facebook pages are at issue, and both are privately owned by Underhill.   As to the Commissioner page, the record shows that Underhill unquestionably used his public office and title to create it, and the Court has found––following an evidentiary hearing—that Underhill was carrying out his duties as a Commissioner by using his personally owned Facebook pages to conduct County business, which resulted in the creation of public records.   Underhill invited discussions on the page in which he participated with his constituents using his title and office, and he informed users that the Commissioner page was not private and would create public records.   He also represented to the County Attorney that the page was being operated under the rules of "public forum" to protect constituents' constitutional rights, ECF No. 150–2 at 3.   The Commissioner page was not used for personal matters, and although it transformed into more of a bulletin board format, there is at least a question of fact as to whether Underhill was a state actor and acted under color of state law in creating the Commissioner page.

Assuming state action with respect to the Commissioner page, Bear must prove that a public forum was opened and he was excluded or his speech infringed under the applicable forum analysis.[20]   Social media accounts can serve as a

---

[20] Courts use "'forum analysis' to evaluate government restrictions on purely private speech that occurs on government property." *Walker v. Tex. Div., Sons of Confederate Veterans,*

designated or limited public forum as "government property that has not traditionally been regarded as a public forum but that has been intentionally opened up for that purpose." *Attwood*, 526 F. Supp. 3d at 1170 (quoting *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011)).   While "[r]easonable time, place, and manner restrictions are allowed" in a designated public forum, "any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest, and restrictions based on viewpoint are prohibited." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469-470 (2009) (internal citations omitted).   A limited public forum is similar but grants selective access to the designated class, and restrictions imposed on speech in a limited forum need only be "reasonable and viewpoint neutral."   *Id.* at 470; *Bloedorn*, 631 F.3d at 1231.   As to this page, the record supports a finding of either a designated or limited public forum, open to the public (initially with no restrictions) and used by Underhill to discuss County business with constituents, despite Underhill's contention that subjectively, he did not intend to create a public

---

*Inc.*, 576 U.S. 200, 215 (2015) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)). The Supreme Court has "identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius*, 473 U.S. at 802.  Viewpoint discrimination—which occurs when a government official's decision to take a challenged action was "impermissibly motivated by a desire to suppress a particular point of view"—is prohibited in all forums. *Cornelius*, 473 U.S. at 812–13.

forum for discussion on the Commissioner page, but rather a one-way electronic bulletin board.

The final inquiry is whether Underhill impermissibly restricted Bear's speech on the Commissioner page.  Underhill argues that no one was banned or blocked based on their viewpoint or the content of their message. Bear argues there are questions of fact because at some point, Underhill added the word list filter and a profanity filter and that despite the filters, constituents continued to engage in expressive activities, but because of the filters, not all comments were visible to all users (unless the parties were Facebook "friends") and some of the comments inexplicably were visible on the Commissioner page despite the filters.   Bear contends that the profanity filter and restricted word list "are unquestionably content based," contrary to First Amendment standards.  ECF No. 150 at 27.

For purposes of strict scrutiny in a designated public forum, a government restriction on speech is based on content if the restriction is based on the "topic discussed or idea or message expressed;" and "[t]his commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *See Reed v. Town of Gilbert Az,* 576 US 155, 163 (2015).  The Court agrees that excluding speech from a designated public forum under a profanity filter would arguably be

unconstitutional, and its reasonableness for use in a limited public forum would present a jury question. *See Cohen v. California,* 403 U.S. 15, 26 (1971) (holding profanity cannot be banned or criminalized absent compelling reason); *Tanner v. Ziegenhorn,* Case No. 4:17 cv780-DPM, 2021 WL4502080 (2021) (finding a profanity filter on Sheriff's Facebook page, including words such as "pig" or "copper" was not justified and that an individual could not be banned from a designated public forum based on a profane message sent to a private administrative page); *Attwood,* 526 F. Supp. 3d at 1173 n.5 ("restricting speech in a designated public forum based solely on a propensity for profanity is arguably unconstitutional").   But there is no evidence that Bear's speech was banned, excluded or hidden under the profanity filter.  None.

The other filter words used to hide comments from view were neutral in character and did not draw a distinction based on a speaker's topic, idea, or viewpoint.  ECF No. 150–5 (filter words included "and, the, you, your, it, good, congradulations, congratulations, will, should, won't, wont, commissioner, commission, board, county, this, that, those, they, them").   All users of the Commissioner page alike were subject to the same neutral word list filter, and Underhill testified that he did not block individuals from the Commissioner page. Bear acknowledged he had access to the page, and there is no evidence to the

contrary. Bear nonetheless suggests that because some messages inextricably could be viewed on the page regardless of the filters, there is a reasonable inference that Underhill might have blocked individuals, but this type of speculation is insufficient to create a material question of fact. Bear has no evidence that he was ever denied access to the Commissioner page, he was never blocked for the use of profanity, and after the common word filters were added, his messages using those words were hidden from public view but still available to him and his "friends," and the filter words were so common that they did not ban any particular topic, message or viewpoint. Moreover, the cases cited by Bear are factually distinguishable because in each instance, the plaintiff was banned or blocked based on the content or viewpoint of their message or filter words pertaining to a particular content or disparaging viewpoint. Underhill is therefore entitled to summary judgment with regard to the Commissioner page.

Regarding the Underhill page, Underhill argues he is entitled to summary judgment because this page was personal and not a public forum, and it contained no vestige or trappings of his office to suggest it was anything other than a personal page. Bear responds that Underhill's testimony creates material questions of fact because he acknowledged discussing County issues on the page, he was required to disclose public records from this page, and Bear was on a list of people Underhill

blocked from the Underhill page.  Bear also argues that Underhill attempted to control the public dialogue by sharing a comment from his Commissioner page to the Underhill page so he could engage only with his Facebook "friends."

The record does not support a finding of state action with regard to the Underhill page.  While some public records were identified on the Underhill page because of their content, that alone is an insufficient basis to find state action for purposes of the entire page. *See Brentwood Acad.*, 531 U.S. at 295 ("[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." (internal quotations omitted)). There is no evidence that Underhill opened this page for public comment or invited public discussions in his capacity as a Commissioner.  *See Halleck*, 139 S. Ct. at 1930 ("merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints").  The page bears no insignia of Underhill's office—no official title, logo, or mark.  Underhill acknowledged that he does occasionally post about issues, political and societal, as he has his entire life, but this is not a situation where the page could only exist by use of his title or office, and the discussions that resulted in the creation of public

records were a small fraction of the content of this page.[21]  Moreover, the record reflects that when discussions on the page veered into County issues, Underhill directed the discussion to his Commissioner page or to his official email while cautioning users that this was a personal page and discussions related to matters that may come before the Board were reserved for his Commissioner page.[22]  *See* ECF No. 144–2 at 246–61.  There is  no question of fact as to state action on this record and no evidence that the Underhill page was a public forum, as opposed to a personal Facebook page.  Therefore, the fact that Bear may have been blocked from the page does not rise to a First Amendment violation.  Underhill is entitled to summary judgment.

Accordingly:

1.    Plaintiff's Partial Motion for Summary Judgment on entitlement to attorney's fees under Counts I and III, ECF No. 145, is **GRANTED**.  Plaintiff has

---

[21] During the litigation, Underhill produced thousands of pages of documents, he withheld approximately 24,000 as personal, and the Court compelled the production of 129 as public records, less than 1%.  *See* ECF No. 128 at 17–18.  In addition, an unknown number estimated by Bear to be in the hundreds were redacted because they contained both personal messages and public records.

[22] These posts were dated November 2018, which was before Underhill had set the Commissioner page with filters attempting to create a one-way communication bulletin board.

**30 days** to file a motion to establish the amount, and the parties are directed to proceed in accordance with N.D. Fla. Loc. R. 54.1(E), (F), and (G).

2.      Defendant Douglas Underhill's Motion for Summary Judgment on Count VII, the individual capacity First Amendment claim, ECF No. 144, is **GRANTED**.

3.      The Motion for Summary Judgment by Douglas Underhill in his Official Capacity, Count V, ECF No. 143, is **MOOT**, *see* ECF No. 148.

4.      Count II is **DISMISSED** pursuant to ECF Nos. 128, 140.

5.      Final judgment will await entry of the attorney's fee award.

**DONE AND ORDERED** this 25th day of March 2023.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

Case No. 3:19cv4424-MCR/HTC