UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID BEAR,

    Plaintiff,

vs.                                 CASE NUMBER: 3:19cv4424-MCR-EMT

ESCAMBIA COUNTY BOARD
OF COUNTY COMMISSIONERS; and
DOUGLAS UNDERHILL,

    Defendants.
_____/

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MEMORANDUM OF LAW

Plaintiff, David Bear, by and through undersigned counsel and pursuant to section 119.12, Florida Statutes, and Local Rule 54.1, files this motion to determine the amount of attorneys' fees and expenses to which he is entitled and states as follows:

1. On March 25, 2023, this Court held that Plaintiff was statutorily entitled to an award of attorneys' fees stemming from his Chapter 119, Florida Statutes, Public Records Act ("Chapter 119") claims against Defendant Douglas Underhill ("Underhill), Counts I and III of the First Amended Complaint (ECF No. 155).

2. As this Court found, Section 119.12, Florida Statutes, entitles Plaintiff to the reasonable costs of enforcement, including reasonable attorneys' fees,

associated with bringing this Chapter 119 action against Underhill.

3. Accordingly, Plaintiff seeks a total of $130,425.50 in attorneys' fees. This figure represents 455.9 hours spent by Plaintiff's counsel litigating Counts I and III of the First Amended Complaint multiplied by counsels' respective hourly rates, detailed below and in the declarations attached hereto.

4. The amount of attorneys' fees Plaintiff seeks in this case does not include time spent on non-compensable activities including time spent by counsel litigating: Plaintiff's First Amendment claims against Underhill, including the extensive time spent litigating Underhill's unsuccessful motion to dismiss, *see, e.g.*, ECF No. 57; Plaintiff's claims against now-dismissed Defendant Escambia County Board of County Commissioners (the "Board"), *see*, *e.g.*, ECF No. 103; Plaintiff's motion to compel discovery from Underhill, *see* ECF No. 104;[1] and, of course, matters unrelated to this litigation.

5. Plaintiff has, to the extent reasonably feasible, separated out time spent by counsel devoted to these non-compensable activities. However, for the time spent on otherwise non-compensable activities that is inextricably intertwined with compensable time, Plaintiff has further reduced the total amount of fees he is seeking by five percent ($6,864.50) to account for any overlap. This reduction also accounts

---

[1] After successfully compelling Underhill to produce certain discovery (ECF No. 116), Plaintiff settled with Underhill on an amount of attorneys' fees related to the motion.

for any redundancies or inefficiencies associated with the use of multiple attorneys. Applying this reduction, Plaintiff's claim for $137,290 in attorneys' fees is reduced to the requested $130,425.50.

6. Pursuant to Local Rule 54.1(E), a declaration setting out the time devoted to the case by date and task, *see* Ex. "1," and a declaration of an independent attorney addressing the reasonableness of the claimed time and rates, *see* Ex. "2," are attached hereto in support of Plaintiff's request.

7. Additionally, Plaintiff seeks $9,825 as reasonable costs of enforcement.[2] This figure represents the $9,150 in costs associated with the download of Defendant's "Douglas Underhill" Facebook page utilizing X1, a third-party e-discovery service provider, as it was only through this mechanism that Plaintiff was ultimately able to obtain a complete response to the public records requests that gave rise to his claims in Counts I and III,[3] as well as $675 in costs associated with retaining Stephen Reyes to supervise the initial download of the Douglas Underhill Facebook page to ensure that all public records requested were captured. *See* Ex. "3."

---

[2] This is in addition to the taxable costs permitted under federal law, a motion for which will be filed following entry of final judgment.

[3] Notably, Plaintiff does not claim the $16,885.00 he incurred in costs related to the X1 Download of the Commissioner Doug Underhill Facebook Page, as Plaintiff acknowledges that the Commissioner Doug Underhill Facebook Page was not included in the public record requests at issue in this case.

## MEMORANDUM OF LAW

### I. Relevant Factual and Procedural Background

The facts leading to Plaintiff's Chapter 119 action against Defendant Underhill date back almost four years. In or around May 2019, Plaintiff submitted a public records request via email to Underhill seeking any records, including Facebook posts, made by Underhill concerning the Board's social media policies. Several months later, on August 27, 2019, Plaintiff submitted another public records request to Underhill seeking the complete history of posts to the "Douglas Underhill" Facebook page related to his public duties. Defendant essentially ignored these requests, and, consequently, Plaintiff was forced to file the present lawsuit in November 2019, to obtain the responsive records, and an amended complaint—the operative pleading—in December 2019.

A review of the docket reveals the extensive litigation that necessitated substantial time devoted to this case by Plaintiff's counsel. After overcoming motions to dismiss aimed at Plaintiff's First Amendment claims, Plaintiff filed a Renewed Motion for Expedited Hearing to Compel Defendants' Responses to Plaintiff's Public Records Requests (the "Motion to Compel Public Records") (ECF No. 74), which the Court granted (ECF No. 77) and set an evidentiary hearing. In advance of the hearing, pursuant to the Court's briefing schedule, Plaintiff filed an

4

extensive memorandum in support of his Chapter 119 claims (ECF No. 83), and a reply to Defendants' responses to the same (ECF No. 87).

On February 1, 2021, Plaintiff's counsel, JJ Talbott and Erik Figlio, participated in an all-day hearing on the Motion to Compel Public Records, conducted by Magistrate Judge Hope Cannon. And following the all-day hearing Plaintiff submitted supplemental briefing at Judge Cannon's request (ECF No. 88). On March 5, 2021, Judge Cannon entered her initial Order on the Motion to Compel (the "Initial Order") finding that Underhill violated Chapter 119 by unlawfully withholding public records (ECF No. 93). Underhill filed an objection to the Initial Order (ECF No. 99), to which Plaintiff was required to file a response (ECF No. 105). On September 8, 2021, this Court entered an Order re-referring the Motion to Compel Public Records to Judge Cannon for a Report and Recommendation (ECF No. 126), which was ultimately entered by Judge Cannon on October 8, 2021 (ECF No. 128, the "R&R"). The R&R was substantively identical to the Initial Order, save for one critical difference: while the Initial Order reserved ruling on the issue of attorneys' fees, the R&R denied Plaintiff's entitlement to attorneys' fees. As a result, Plaintiff was required to file objections to the R&R (ECF No. 132), in addition to filing a response to Underhill's objections to the findings in the R&R that he violated Chapter 119 (ECF No. 135).

On March 1, 2022, this Court entered an order adopting the R&R's findings

that Underhill violated Chapter 119 by withholding public records and rejecting Underhill's legally unsupported definition of a public record (ECF No. 140). The Court deferred ruling on the issue of Plaintiff's entitlement to attorneys' fees. Thereafter, Plaintiff filed a partial motion for summary judgment (ECF No. 145) and reply in support of the same (ECF No. 153), on the issue of his entitlement to attorneys' fees under Chapter 119. This Court granted Plaintiff's motion on March 25, 2023 (ECF No. 155).

Between the extensive briefings and responses filed by the parties, Plaintiff's counsel was also required to engage in lengthy discovery battles with Underhill, resulting in various motions for stays, extensions, stipulated protective orders, and other matters requiring motion practice and, ultimately, judicial intervention. Further, Plaintiff's counsel conducted the all-day deposition of Underhill, a large portion of which was devoted to Plaintiff's Chapter 119 claims, as well as the deposition of Underhill's aide, Jonathan Owens, who was involved in responding to Plaintiff's public records requests on behalf of Underhill, and Mary Grace Rahm, an individual who was responsible for conducting an initial download related to Plaintiff's public records requests. Plaintiff's counsel also prepared Plaintiff for his deposition in this matter, drafted and responded to written discovery related to Plaintiff's Chapter 119 claims, and reviewed and organized thousands of relevant documents.

In total, in relation to these activities, Plaintiff's counsel expended 455.9 hours. Again, as evidenced by Exhibit 1, this time specifically excludes non-compensable activities including Plaintiff's First Amendment claims, Plaintiff's claims against the County, and Plaintiff's motion to compel discovery filed against Underhill.

Additionally, in early 2020, Plaintiff retained Stephen Reyes to observe an initial download of Underhill's Facebook pages to collect records responsive to Plaintiff's public records request—the download which Judge Cannon reviewed in camera to determine whether Underhill violated Chapter 119. *See* Ex. "3." Subsequently, in or around October 2021, Plaintiff retained the services of e-discovery vendor X1 to help collect any additional public records contained within the Douglas Underhill Facebook page not produced as part of the initial download. *Id*. As provided above, these costs were necessary to obtain and confirm receipt of all records responsive to Plaintiff's public records requests.

## LEGAL ARGUMENT

I.  **Reasonable Attorneys' Fees**

Section 119.12, Florida Statutes, entitles Plaintiff to "the reasonable costs of enforcement, including reasonable attorney fees." As a state-law claim, courts have held that state law governs the attorneys' fees analysis. *See, e.g., Equals Int'l, Ltd. v. Scenic Airlines*, 35 F. App'x 532, 534 (9th Cir. 2002) (unpublished); *MRO*

*Commc'ns, Inc. v. AT&T*, 197 F.3d 1276, 1279 (9th Cir. 1999); *A1 Garage Door Service, L.L.C. v. West*, No. 21-cv-01821-PAB-NRN, 2022 WL 952874 (D. Co. Mar. 30, 2022); *Ozbakir v. Scotti*, 906 F. Supp. 2d 188, 192 (W.D.N.Y. 2012) ("[I]n an action arising under state law, a federal court applies the law of the relevant state in determining whether to award attorney's fees."); *Crommie v. Cal. Pub. Util. Comm'n*, 840 F. Supp. 719, 721 (N.D. Cal. 1994) (noting that federal courts apply state attorneys' fee law to pendent state-law claims).

Florida courts, like federal district courts in the Eleventh Circuit, employ a "lodestar" method to calculate reasonable attorneys' fees. *See Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985); *see also Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The Florida Supreme Court in *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 identified the relevant framework for determining a reasonable amount of attorneys' fees:

> The first step in the lodestar process requires the court to determine the number of hours reasonably expended on the litigation. Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the client may pay the fee. To accurately assess the labor involved, the attorney fee applicant should present records detailing the amount of work performed. **<u>Counsel is expected, of course, to claim only those hours that he could properly bill to his client</u>**. Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary. The "novelty and difficulty of the

8

> question involved" should normally be reflected by the number of hours reasonably expended on the litigation.
>
> The second half of the equation, which encompasses many aspects of the representation, requires the court to determine a reasonable hourly rate for the services of the prevailing party's attorney. In establishing this hourly rate, the court should assume the fee will be paid irrespective of the result, and take into account all of the Disciplinary Rule 2–106 factors except the "time and labor required," the "novelty and difficulty of the question involved," the "results obtained," and "[w]hether the fee is fixed or contingent." The party who seeks the fees carries the burden of establishing the prevailing "market rate," i.e., the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services.
>
> The number of hours reasonably expended, determined in the first step, multiplied by a reasonable hourly rate, determined in the second step, produces the lodestar, which is an objective basis for the award of attorney fees. Once the court arrives at the lodestar figure, it may add or subtract from the fee based upon a "contingency risk" factor and the "results obtained."

*Id*. at 1150-51, *holding modified by Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990) (emphasis added) (citations omitted).

When there are multiple claims and a party is entitled to fees for only some of the claims, the court may still award a full fee where the issues in the claims involve a common core of facts that are so intertwined that allocation is not feasible. *See Current Builders of Fla., Inc. v. First Sealord Sur., Inc.*, 984 So. 2d 526, 533 (Fla. 4th DCA 2008); *Mukamal v. Swire Pac. Holdings, Inc.*, 08-23444-CIV, 2011 WL 13173589, at *3 (S.D. Fla. July 29, 2011) (quoting *Anglia Jacs & Co., Inc. v. Dubin*, 830 So. 2d 169, 172 (Fla. 4th DCA 2002)). Claims are "inextricably intertwined"

when the determination of the issues in one claim would necessarily be dispositive of the issues raised in the other. *See Cuervo v. W. Lake Vill. II Condo. Ass'n, Inc.*, 709 So. 2d 598, 599 (Fla. 3d DCA 1998).

Additionally, when there are multiple defendants, but only one defendant is found liable, the "hours chargeable to the claims against defendants who are found not liable are chargeable to defendants against whom plaintiff prevailed if such hours also were fairly devoted to the prosecution of the claims against the defendants over whom plaintiff prevailed." *Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1210 (N.D. Fla. 2019) (quotation omitted).

If the billing records presented in support of the attorneys' fee request appear reasonable then the burden shifts to the opponent of the fee to point out with specificity which hours should be deducted. *See 22nd Century Properties, LLC v. FPH Properties, LLC*, 160 So. 3d 135, 143 (Fla. 4th DCA 2015) (affirming an award of $631,969.50 in attorneys' fees for litigation spanning approximately two years); *Hodges v. School Bd. of Orange Cty., Fla.*, No. 6:11-cv-135, 2014 WL 6455436, at *9 (M.D. Fla. Nov. 13, 2014) ("[A] party opposing a fee application should submit objections and proof that are specific and reasonably precise, and . . . a failure to do so is generally fatal.").

### A.   Numbers of Hours Reasonably Expended

As the Florida Supreme Court recognized in *Rowe*, accurate and current

records of work done and time spent on a case that was actually billed to a client is one of the hallmarks of reasonableness. *Rowe*, 472 So. 2d at 1150. The attached Exhibit 1 satisfies this requirement, and, in accordance with Local Rule 54.1, sets forth the time devoted to Counts I and III of the First Amended Complaint by date and task, specifically identifying the timekeeper and the timekeeper's claimed hourly rate.[4]

As detailed therein, the total time spent by each timekeeper is as follows:

| **Timekeeper** | **Hours** | **Amount** |
|---|---|---|
| Attorney Alexandra E. Akre ("AEA") | 166.4 | $37,440.00 |
| Attorney Erik M. Figlio ("EMF") | 97.9 | $36,712.50 |
| Attorney JJ Talbott ("JJT") | 164 | $57,400.00 |
| Attorney Travis P. Lampert ("TPL") | 5.9 | $1,475.00 |
| Attorney Ryan P. Stoner ("RPS") | 12.4 | $3,100.00 |
| Paralegal ("PAR")[5] | 9.3 | $1,162.50 |
| **TOTAL:** | 455.9 | $137,290.00 |

---

[4] To the extent Underhill asserts that some of the time entries reflect "block-billing" or are otherwise insufficiently detailed, the Court should decline to reduce any entry that Underhill specifically identifies to the extent it allows the "Court to ascertain the services rendered." *See Prison Legal News*, 411 F. Supp. at 1213.

[5] Time expended by paralegals is recoverable to the extent that they perform work traditionally done by an attorney. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988).

In sum, and as confirmed by independent attorney Charles Beall, *see* Exhibit "2," 455.9 hours was reasonably expended on Counts I and III of this litigation. Throughout this case, Underhill repeatedly raised a novel defense to Plaintiff's Chapter 119 claims against him: that a member of a collegiate body cannot create public records unless he has the literal endorsement of the entire body itself. Responding to this extremely unfounded legal position required detailed research and briefing by Plaintiff's counsel, as well as extensive discovery to (1) understand the complete universe of records at issue; and (2) fully vet the position taken by Underhill. As Judge Mark Walker recognized in *Prison Legal News*, a defendant who "zealously" defends a case, "cannot [] in good faith complain of the consequences," at the attorneys' fee stage. *Prison Legal News*, 411 F. Supp. 3d at 1215.

Further, Plaintiff's counsel was careful to assign primary responsibility for tasks in the most efficient and cost-effective manner possible in order to avoid unnecessary or excessive time being billed to Plaintiff. *See also Advanced Diabetes Treatment Ctrs., LLC v. Sebelius,* No. 09-61698, 2012 WL 5077155, at *15 (S.D. Fla. Sept. 20, 2012) ("Unless a law firm is handling the simplest of cases, it would be naive to believe that attorneys should not brainstorm over strategic decisions. In fact, it could be detrimental to a client's overall litigation position if lawyers operated in intellectual silos and never shared analytic approaches with their colleagues. Thus,

multiple attorneys on the same case are not automatically precluded from obtaining fees for strategic conferences between themselves.").

More specifically, Ms. Akre, a 2016 graduate of the Florida State University College of Law and former U.S. Court of Appeals for the Eleventh Circuit law clerk, was the primary drafter of the motions and papers filed in this matter, and prepared for and took the deposition of Underhill. Mr. Figlio, a 2002 graduate of the University of Georgia College of Law and former General Counsel to Governor Rick Scott and Governor Charlie Crist, was primarily responsible for revising motions and papers, devising overall case strategy, and communicating with the client and opposing counsel. Mr. Talbott, a 1997 graduate of the Cumberland School of Law and seasoned plaintiff's attorney in Pensacola, drafted and filed the initial public records requests, pleadings, and discovery, and served as lead counsel at the February 1, 2021, hearing. Mr. Lampert and Mr. Stoner assisted Mr. Talbott with these tasks, as did his paralegal.

Where time for certain tasks related to Counts I and III is commingled with non-compensable activities, such as Plaintiff's First Amendment claims, Plaintiff endeavored to apportion out any non-compensable time to the extent reasonably feasible. Only for those activities where the time spent between compensable and non-compensable tasks is inextricably intertwined, like, for example, the deposition of Underhill, does Plaintiff seek the full amount of fees. Similarly, Plaintiff

13

eliminated any time spent on activities related solely to the now-dismissed Board, unless the time spent was fairly devoted to the prosecution of the claims against Underhill.

In any event, to further ensure reasonableness of the time sought, Plaintiff agrees to a five percent reduction of the total amount of fees sought—bringing the total amount from $137,290 to $130,425.50. Because of the careful apportionment by Plaintiff and five percent reduction, any further reduction based on a results obtained analysis is not warranted.

### B. Counsel's Hourly Rate

A reasonable hourly rate is the market rate or the rate charged in the community by lawyers of reasonably comparable skill, experience and reputation, for similar services. *Rowe*, 472 So. 2d at 1150.

| **Timekeeper** | **Years of Experience** | **Hourly Rate** |
|---|---|---|
| Attorney Alexandra E. Akre ("AEA") | 6 | $225 |
| Attorney Erik M. Figlio ("EMF") | 20 | $375 |
| Attorney JJ Talbott ("JJT") | 25 | $350 |
| Attorney Travis P. Lampert ("TPL") | 10 | $250 |
| Attorney Ryan P. Stoner ("RPS") | 6 | $250 |
| Paralegal ("PAR") | -- | $125 |

Taking into account the Disciplinary Rule 2–106 factors stated in *Rowe*, the above rates are reasonable and based on the prevailing market rate in Escambia County, Florida for similar services by lawyers of reasonably comparable skills for the type of work. *See* Ex. "2."

## II.   Reasonable Costs of Enforcement

Section 119.12, Florida Statutes, also entitles Plaintiff to other reasonable costs of enforcement. Here, in addition to the costs permitted under the Federal Rules of Civil Procedure which Plaintiff intends to seek in a separately filed motion for costs, Plaintiff seeks the reasonable costs incurred in actually obtaining the public records requested, namely the costs associated with retaining Stephen Reyes, who observed the initial download of records responsive to Plaintiff's public records requests, and the costs of the X1 download of the Douglas Underhill Facebook page, which ultimately ensured that all records responsive to Plaintiff's public records requests were received. The total cost for these expenses is $9,825.00, which is evidenced by the invoices attached as Exhibit "3."

## CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that the Court award Plaintiff $130,425.50 in attorneys' fees and $9,825.00 in costs of enforcement.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 56.1 (B)**

Undersigned counsel certifies that this memorandum complies with N.D. Fla. Local Rule 56.1(B) and contains 3354 words, exclusive of the case style, signature block, and any certificate of service.

**CERTIFICATION OF CONFERRAL**

Pursuant to Local Rule 7.1 the undersigned counsel conferred in good faith with Defendant's counsel via telephonic conference regarding the foregoing motion. The parties were unable to reach agreement as to the amount of attorneys' fees to which Plaintiff is entitled.

Respectfully submitted,

/s/ *Erik M. Figlio*
ERIK M. FIGLIO
Florida Bar No.: 0745251
ALEXANDRA E. AKRE
Fla Bar No. 125179
Ausley McMullen
123 South Calhoun Street (32301)
Post Office Box 391
Tallahassee, Florida  32302
Phone No.:  (850) 224-9115
rfiglio@ausley.com
aakre@ausley.com
csullivan@ausley.com
nestes@ausley.com

>/s/ *Jeremiah J. Talbott*
>JEREMIAH J. TALBOTT, ESQ.
>Fla. Bar No. 0154784
>Talbott Law Firm
>900 East Moreno Street
>Pensacola, FL 32503
>(850) 437-9600 / (850) 437-0906 (facsimile)
>jj@talbottlawfirm.com;
>civil@talbottlawfirm.com
>
>ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been filed furnished electronically to counsel for Defendants, as listed below, via the CM/ECF System on this 24th day of April, 2023.

>/s/ *Erik M. Figlio*
>Erik M. Figlio

Edward P. Fleming, Esq.
Matthew Bush, Esq.
McDonald, Fleming, Moorhead
P.O. Box 12388
Pensacola, FL 32591-2388