UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID BEAR,

     Plaintiff,

v.                                                                    Case No. 3:19cv4424-MCR-HTC

DOUGLAS UNDERHILL,

     Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on referral from the District Judge for a report and recommendation on two motions.  The first is Plaintiff David Bear's motion for a determination of attorney's fees amount.  ECF Doc. 156.  The second is Defendant Douglas Underhill's motion for reconsideration or, alternatively, for remand.  ECF Doc. 158.  Both motions have been fully briefed,[1] and after reviewing the parties' submissions, the undersigned recommends: (1) Bear's motion be granted to the extent that he be awarded $130,425.50 in attorney's fees; and (2) Underhill's motion for reconsideration or remand be denied.

---

[1] *See* Plaintiff's opposition to motion to remand, ECF Doc. 162; Defendant's response in opposition to motion for fees, ECF Doc. 157; and Plaintiff's reply to the opposition to the motion for fees, ECF Doc. 164.

## I.    Background

In 2019, Bear, a resident and citizen of Escambia County, submitted several records requests, pursuant to Florida's Public Records Act ("PRA"), to Underhill, who was one of five commissioners on the Escambia County Board of County Commissioners ("ECBCC"), the governing board for the County.  Specifically, Bear sought copies of messages and posts that were on certain Underhill Facebook pages.[2] After failing to receive satisfactory responses, Bear filed this suit, alleging the ECBCC and Underhill violated the PRA (Counts I, II, III, and IV).  Bear also sued Underhill and the ECBCC for violating his First Amendment rights (Counts V, VI, and VII) by preventing him from posting or seeing messages on those same Underhill Facebook pages.[3]  Although Bear specifically stated that he was suing Underhill in his official capacity as to Count V, and in his individual capacity as to Count VII, Bear did not identify the capacity under which he was suing Underhill under the PRA.

This matter initially came before the undersigned to address a motion to compel production of documents under the PRA.  ECF Doc. 74.  After conducting an evidentiary hearing in February 2021, reviewing, *in camera*, 24,000 pages of

---

[2] Underhill had several Facebook pages which he used to communicate with constituents: (1) the Douglas Underhill page; (2) the Commissioner Douglas Underhill page, and (3) a page for his campaign.

[3] For a detailed discussion of the background of this case, see the Order at ECF Doc. 155.

Facebook postings and messages, and finding that certain of those postings and messages were "public records" under the PRA, the undersigned granted the motion to compel. ECF Doc. 93. Because the undersigned's determination of the motion to compel was essentially dispositive of the PRA claims, the district judge referred the matter back to the undersigned for a report and recommendation on the merits of those Counts and on entitlement to attorney's fees after Bear filed a renewed motion to compel. ECF Doc. 126. Consistent with the undersigned's prior findings, the undersigned recommended Bear's renewed motion to compel be granted, but recommended the motion for fees be denied. ECF Doc. 128.

On January 27, 2022, Bear moved to dismiss the claims against the ECBCC (Counts IV and VI) pursuant to a settlement agreement,[4] ECF Doc. 138, which the Court granted, ECF Doc. 139. On July 12, 2022, the parties also stipulated to the dismissal of claims which "can be characterized as seeking relief against the Defendant, Douglas Underhill, in his official capacity as a commissioner serving on the Escambia County Board of County Commissioners." ECF Doc. 148 at 1.

On March 25, 2023, the Court entered an Order addressing the remaining issues: (1) whether Bear was entitled to an award of attorney's fees; and (2) whether

---

[4] A copy of the settlement agreement and amended settlement agreement can be found at ECF Docs. 157-1 and 164-1, respectively.

Underhill was entitled to judgment on Bear's First Amendment claim (Count VII).[5] ECF Doc. 155.  In addressing those issues, the Court determined Bear was entitled to fees under the PRA and that Underhill was entitled to summary judgment on the First Amendment claim.  *Id.*

In accordance with the Court's March 25 Order, Bear has filed a motion seeking $130,425.50 in attorney's fees and $9,825 in costs.  ECF Doc. 156.  In response, Underhill has filed a motion seeking to have the Court reconsider the award of fees or, alternatively, now 4 years later, remand this case to state court. ECF Doc. 158.

## II.    Discussion

As will be discussed in detail below, the undersigned recommends the motion for fees be granted, except as to the portion seeking costs, and the motion to reconsider or remand be denied.

### A.    Underhill's Motion for Reconsideration

Underhill argues he cannot be sued under the PRA in his individual capacity and, thus, the stipulated dismissal of the official capacity claims against him ended the PRA action and excuses him from any liability for attorney's fees.  As an initial matter, Underhill has filed his request under the incorrect procedural avenue.  Such

---

[5] The request to Underhill underlying Count II was dismissed as a nullity because it was not a request for public records.  ECF Doc. 155, at n.2.

a motion is not proper under Rule 59(e) because the Court's March 25 Order, which

reserved judgment for the entry of fees, is not a final judgment. *See Hertz Corp. v.*

*Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1132 (11th Cir. 1994) ("The strictures of

Rule 59(e) remain dormant … until a final judgment has been entered."); *see also*

Fed. R. Civ. P. 54(a) (defining "judgment" as "any order from which an appeal lies").

Moreover, even if it were a final judgment, the motion would be untimely because

"[a] motion to alter or amend a judgment must be filed no later than 28 days after

the entry of the judgment." Fed. R. Civ. P. 59(e).

Instead, the motion, at best, falls under Rule 60. Thus, the undersigned will

consider the motion as being brought under Rule 60. *See Molbogot v. MarineMax*

*E. Inc.*, 2022 WL 2671124, at *1 (S.D. Fla. July 11, 2022) (holding that because no

judgment had been entered, Rule 59(e) was inapplicable, and the party should have

filed a Rule 60(b) motion. "Rule 60(b) allows a party to seek relief or reopen his

case based upon the following limited circumstances: (1) mistake or excusable

neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the

judgment has been discharged; and (6) 'any other reason that justifies relief.'"[6]

*Whipple v. Fla. Dep't of Corr.*, 2017 WL 11637289, at *2 (11th Cir. Oct. 25, 2017)

(citing Fed. R. Civ. P. 60(b)). Under Rule 60(b)(1), a mistake can include a court's

---

[6] A Rule 60 motion must be brought within a "reasonable time," and, if it falls under subsection (1), (2) or (3), within one (1) year of the order from which relief is sought. Fed. R. Civ. P. 60(c)(1).

legal errors, which the undesigned presumes is the basis of Underhill's motion. *See Kemp v. United States*, 142 S. Ct. 1856, 1862 (2022).

However, even under Rule 60, the motion should be denied. First, "[p]laintiffs are not usually required to designate, with particular words in the pleadings, that they bring their action against defendants in the defendants' individual or official capacities, or both."[7] *Hobbs v. Roberts*, 999 F.2d 1526, 1529-30 (11th Cir. 1993) (citation omitted). Thus, it is of no import that Bear did not identify Counts I or III as being asserted in Underhill's individual capacity.[8]  Second, contrary to Underhill's argument, Bear's testimony at the February 2021 evidentiary hearing does not show he only intended to sue Underhill in his official capacity under the PRA. ECF Doc. 158 at 6. Instead, when fairly read, Bear's testimony simply supports his belief that Underhill's communications were public records (a proposition this Court agreed with) if they related to his official duties or county

---

[7] Instead, "courts must look to 'the course of the proceedings' which will 'typically indicate the nature of the liability sought to be imposed.'" *Hobbs*, 999 F.2d at 1528 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Here, Bear clearly sought relief from Underhill as an individual, as he was the custodian of the requested records and responsible for the nondisclosure.

[8] Underhill attempts to make an "expressio unius" argument, suggesting Bear's identification of one of the First Amendment claims as an individual capacity claim "negates any inference" the PRA claims were individual capacity claims. However, Bear's other First Amendment claim against Underhill specified it was an official capacity claim. Because both of Bear's First Amendment claims against Underhill specified a capacity—one individual, one official—there is no inference to be drawn with respect to the three PRA claims against Underhill that do not specify a capacity.

business.  ECF Doc. 144-1 at 100-01.  Regardless, Bear is a lay witness, not a legal

expert.

Third, and more importantly, Underhill's argument that he cannot be liable in

his individual capacity for violating the PRA because such a violation is necessarily

premised on Underhill having made communications in his official capacity, is a red

herring that falls flat.  Whether Underhill was acting in his official capacity when he

communicated with constituents through the Facebook pages is determinative of

only whether the communication was a "public record" under the PRA.  It is not

determinative of whether Underhill can be liable, individually, for failing to produce

public records – particularly, public records for which he, as the administrator of the

Facebook pages, was the custodian and not the ECBCC.

As the cases cited by Underhill illustrate, the phrase "official capacity" simply

describes the type of conduct that makes a record public.  *See City of Sunny Isles

Beach v. Gatto*, 338 So.3d 1045 (Fla. 3d DCA 2022) (concluding text messages sent

from city commissioner to her husband during commission meeting were not public

records, finding they "were uniformly personal and private and were not made in

connection with any business transacted by the City" and commissioner "was not

acting in her official capacity as a City Commissioner when texting with her

husband"); *Miami Herald Media Co. v. Sarnoff*, 971 So.2d 915 (Fla. 3d DCA 2007

(concluding memo written by city commissioner after attending meeting "in his

official capacity" was a public record because it summarized allegedly factual information relayed by former city official about possible criminal activity). And in *City of N. Miami v. Miami Herald Publ'g Co.*, 468 So.2d 218 (Fla. 1985), the court addressed whether communications between a lawyer and a public-entity client were exempt from the PRA's disclosure requirements. The court answered the question with "a qualified no," rejecting the petitioners' argument "that they are constitutionally entitled, *as individuals*, to private communications with the city's attorney" and noting "[t]he city attorney furnishes legal assistance to council members in their official capacity, not as individual citizens." *Id.* at 219-20. Thus, the cited cases do not establish an individual cannot be sued under the PRA.

To the contrary, and as the Court noted in its March 25, 2023, Order, the plain language of the PRA indicates Underhill can be sued and held liable for attorney's fees in his individual capacity. ECF Doc. 155 at 16-18. Under the PRA, attorney's fees can be awarded against the "responsible agency" and "agency" is broadly defined to include any public or private person acting on behalf of any public agency. Fla. Stat. §§ 119.011(2), 119.12(1). Because Underhill was acting on behalf of a public entity, the custodian of the requested records, and responsible for the nondisclosure, he can be *individually* liable for attorney's fees under the plain language of the statute.

Underhill's assertion that the phrase "acting on behalf of any public agency" mandates such suits be brought against individuals in their official capacity is unpersuasive. Importantly, that interpretation is inconsistent with the fact private corporations can be liable for attorney's fees under the PRA, as those entities would not be sued in their "official capacity," and they can be personally responsible for the attorney's fees. *See Times Publ'g Co., Inc. v. City of St. Petersburg*, 558 So.2d 487, 494-95 (Fla. 2d DCA 1990) (holding trial court properly held attorney's fees and costs may be assessed against Chisox Corporation and Chicago White Sox, Ltd. based on their violation of the PRA).

Thus, the "official capacity" inquiry is related to whether a record is public and subject to disclosure, while the determination of who is liable for attorney's fees is related to who was the custodian of the records and who was responsible for their nondisclosure. And "[t]o repeat the obvious, people can be liable in their individual capacities for acts performed in state employment, that is, as state agents. The most prominent examples are individual capacity actions brought under 42 U.S.C. § 1983, where plaintiffs must prove that the defendant acted under color of law, … which in innumerable cases has meant proving that defendants committed some actionable wrong in the course of performing a government job." *Hobbs*, 999 F2d at 1530 ("That the engineer defendants worked for a state agency, as opposed to a private firm, does not rule out the possibility of individual liability for engineering

malpractice."). Based on the foregoing, Underhill has not established a valid basis for the Court to reconsider its March 25, 2023, Order. The Court made no mistake or legal error when it concluded that Bear could recover attorney's fees against Underhill, individually, for failing to provide the requested public records in his custody.

### B.    Underhill's Motion to Remand

As an alternative to reconsideration, Underhill suggests this case should be remanded so a state court can consider the remaining issues of state law, now that the First Amendment claims have been resolved. This argument fails for two reasons. First, there are no state law issues remaining to be decided. Underhill tortuously argues this case should be remanded because whether he can be liable under the PRA in his individual capacity and whether Bear sought public records for an improper purpose (thus prohibiting the imposition of fees) are state law issues that should ultimately be decided by state courts. The crucial problem with Underhill's argument, however, is that neither of those issues remain pending.

The Court decided Underhill's individual capacity argument in its March 25, 2023, Order and, as discussed above, Underhill has not identified a valid ground for reconsideration of that Order. And, as discussed more below, Underhill waived the "improper purpose" argument by failing to raise it earlier in the litigation. The

purpose of remand is not served by allowing a litigant dissatisfied with the results in federal court to run to state court in hopes of a different resolution.

Second, even if there were any state law issues remaining, "[t]he decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court," *Raney v. Allstate In. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) (citation omitted), and here there is certainly no abuse of discretion for the Court to deny remand given the Court's familiarity with this case and the amount of time it has been pending with this Court. "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.*

The *Cohill* factors—judicial economy, convenience, fairness, and comity—weigh in favor of the Court retaining jurisdiction over this case. The parties have expended significant time and resources litigating the case in this Court since 2019. The Court held a detailed evidentiary hearing regarding the matter and conducted an *in camera* review of over 24,000 documents. The Court is acquainted with the details of this case, discovery has closed, and the Court has issued a substantive ruling on each federal and state law claim. *See Casey v. City of Miami Beach*, 805 F. Supp. 2d 1361, 1362 (S.D. Fla. 2011). The only issue remaining for the Court to decide is the amount of attorney's fees to award, which this Court is more than capable of addressing using the lodestar method. Accordingly, Underhill's motion to remand should be denied.

### C.    Bear's Motion to Determine the Amount of Attorney's Fees

Pursuant to the Court's March 25, 2023, Order determining Bear is entitled to an award of attorney's fees and costs, Bear has filed a motion seeking $130,425.50 in attorney's fees for 455.9 hours spent litigating the PRA claims against Underhill and costs of $9,825. ECF Doc. 156. In support, Bear has provided billing records, invoices, affidavits from counsel, and an affidavit of reasonableness. Underhill opposes Bear's motion on four grounds, the first of which goes not to the amount of fees to be awarded, but rather to whether Bear is entitled to fees in the first place. Specifically, Underhill argues this Court should not have determined Bear was

entitled to fees and costs, without first addressing whether Bear's public records requests were made for an improper purpose.

As to the amount of fees and costs sought, Underhill argues (1) Bear cannot recover the costs associated with extracting data from Underhill's Facebook page because the PRA requires the requester to pay those costs; (2) Bear cannot recover fees for litigating his unsuccessful § 1983 claim and his claims against Escambia County; and (3) the evidence submitted by Bear is insufficient to support an award of attorney's fees. Notably, Underhill has not identified any particular charge for litigating the PRA claims he disputes, and he also does not object to the reasonableness of the hourly rates sought by Bear.

Before addressing the merits of the motion, the undersigned will first address Underhill's request for an evidentiary hearing. Underhill states he "has submitted written discovery on these issues, and intends to take the deposition of the Plaintiff and any expert witness it would put forward in its attempts to recover $135,000 in fees[.]" ECF Doc. 157 at 7. However, the Supreme Court has advised courts that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1153 (11th Cir. 2008) ("When deciding a motion for attorney's fees, courts rarely reopen discovery, and evidentiary hearings are often unnecessary.") (citation omitted). Because "[i]t is perfectly proper to award

attorney's fees based solely on affidavits in the record[,]" *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted), and Underhill has failed to identify a genuine dispute of fact, additional discovery or an evidentiary hearing is not warranted. The Court, thus, does not abuse its discretion in declining to hold an evidentiary hearing or to punt this matter for another 90 days as Underhill suggests. *See Sorola v. City of Lamesa*, 808 F.2d 435, 437 (5th Cir. 1987) ("Appellant presented no facts contradicting or tending to contradict Gorsline's sworn affidavit. In the absence of a disputed issue of material fact, no evidentiary hearing was necessary.").

Moreover, what Underhill claims to need in discovery has nothing to do with whether the fees and costs sought by Bear were for services performed in prosecuting the PRA claims against Underhill or were reasonable. As discussed further below, the affidavits, billing records, and invoices provided by Bear support a determination of fees. What Underhill seeks is information he believes will undermine the settlement agreement Bear entered into with the ECBCC on the claims in this suit. For example, Underhill argues he should be able to "explore" any "overlap" between the $135,000 sought by Bear here and the $190,000 in liquidated damages provided for in the settlement agreement.[9]  ECF Doc. 157 at 7. While litigation regarding the

---

[9] Underhill states in his opposition to the motion for fees that "[s]everal legal and factual issues flow from the settlement agreement." ECF Doc. 157 at 4. He calls the "legality" of the settlement

propriety of that settlement agreement could be on the horizon, that is not a matter for this Court.

### i.    Improper Purpose

As discussed above, the Court previously determined Bear is entitled to attorney's fees on his PRA claims.  ECF Doc. 155.  Nevertheless, Underhill takes issue with that determination, arguing, for the first time, that the Court determined entitlement to fees under the PRA without first addressing whether Bear's public records request was for an improper purpose – a finding Underhill argues is required by Fla. Stat. § 119.12(3).  Underhill contends this is an "issue of first impression" under Florida law and that he should be entitled to an evidentiary hearing.

Underhill's argument fails for multiple reasons.  First, the argument has been waived.  When Bear moved for summary judgment on the issue of entitlement to attorney's fees under Fla. Stat. § 119, Underhill never argued Bear's public records requests were for an improper purpose.  *See Gennusa v. Canova*, 748 F.3d 1103,

---

agreement "dubious," and describes the settlement agreement as punitive to the citizens of Escambia County.  *Id.* at 5.  He insinuates Bear's counsel improperly "flip[ped]" sides by representing Bear against the ECBCC here and drafting the settlement agreement, while representing the ECBCC in a wholly unrelated and separate attorney's fees dispute between the ECBCC and Underhill arising out of a defamation suit by Scott Miller against Underhill (*Miller v. Underhill*, 2019 CA 931 (granting summary judgment on immunity grounds after finding statements were made by Underhill in his role as a Commissioner even though statements were made on Facebook rather than at a board meeting), *aff'd per curiam,* 301 So.3d 906 (1st DCA 2020)). *Id.* at 3-4; *see Underhill v. Escambia Cnty. Bd. of Cnty. Comm'rs*, 2021 CA 148 (granting reimbursement of fees), *aff'd on appeal*, *Escambia Cnty. Bd. of Cnty. Comm'rs,* -- So.3d --, 2023 WL 3215529 (1st DCA May 3, 2023).

1116 (11th Cir. 2014) (district court is "not obliged to distill a potential argument that could have been made based upon the materials before it on summary judgment") (cleaned up) (citation omitted).  And he did not make that argument before the undersigned when she issued her Report and Recommendation or to this Court when objections were filed.

Now, after having lost on the issue of entitlement, Underhill is attempting to relitigate the issue by raising the improper purpose argument in response to Bear's motion to determine the fee amount.   Underhill's belated attempt to raise the argument is not permissible, particularly when he offers no reason for why it was not raised in response to Bear's initial motion.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469-70 (5th Cir. 1967) ("Much of the value of summary judgment procedure … would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory.").  Thus, Underhill has waived the argument that Bear's public records requests or this litigation were motivated by an improper purpose, or that the Court was required to expressly find a proper purpose in its March 25, 2023, Order.

Even assuming the argument has not been waived, it is without merit. Underhill cites no statute or caselaw indicating the Court was required to make an express determination that Bear's records requests were for a proper purpose, particularly when Underhill did not raise the issue. And in any event, Underhill has not demonstrated Bear's requests or his pursuit of this litigation were for an improper purpose. The statute defines "improper purpose" as "a request to inspect or copy a public record or to participate in the civil action primarily to cause a violation of this chapter or for a frivolous purpose." Fla. Stat. § 119.12(3).

While there is animosity between Underhill and Bear, and allegedly derogatory comments made by Underhill may have provided the impetus for Bear's records requests, Underhill cites no evidence which suggests Bear's requests were frivolous or intended to cause a violation of Fla. Stat. § 119, as opposed to a genuine attempt to access records by a citizen concerned with County affairs. Indeed, the violation of the statute occurred only when Underhill failed to produce the requested records or otherwise respond. Thus, the evidence does not indicate Bear made "sham" public records requests for the purpose of generating litigation and attorney's fees.

As for this litigation, Underhill contends Bear pursued it as "retaliation for what he deemed unmerited criticism of the Bear family" by Underhill. ECF Doc. 157 at 12. Underhill notes the settlement agreement between Bear and Escambia

County expressly incentivized "the County to vigorously defend [against] any claim asserted by Commissioner Underhill seeking reimbursement of any of his attorneys' fees or costs" by requiring the County to pay a liquidated sum of $190,000 to Bear if such reimbursement occurred.[10]  ECF Doc. 157-1 at 2.  Underhill argues this settlement agreement attempts to punish him by interfering with his right to reimbursement of his attorney's fees from the County.

However, even if the agreement could be construed as punitive, it does not follow that Bear "participate[d] in the civil action primarily … for a frivolous purpose."  Fla. Stat. 119.12(3).  As the legislative history cited by Underhill makes clear, the "improper purpose" provision in Fla. Stat. § 119.12(3) was intended to deter frivolous lawsuits designed to generate attorney's fees.  Underhill has cited nothing which indicates: (1) Bear did not genuinely want the records he requested; or (2) Bear pursued this litigation not to obtain those records, but to generate attorney's fees.  In other words, pursuant to the plain text of Fla. Stat. § 119.12(3), the punitive aspects of Bear's settlement agreement with the County are not relevant to the improper purpose analysis.  Accordingly, even if Underhill had not waived

---

[10] The settlement agreement has been amended to make clear that Bear shall not make a double recovery of fees, such that the liquidated damages amount will be reduced by any amount of fees Bear recovers against Underhill that is duplicative of the fees assessed to the ECBCC.  ECF Doc. 164-1.

the improper purpose argument, it would not excuse him from paying attorney's fees.

### ii.    Facebook Data Extraction Costs

Bear seeks to recover $9,825 in costs, consisting of $9,150 paid to X1, an e-discovery service provider, to download the "Douglas Underhill" Facebook page and $675 paid to Stephen Reyes to supervise the initial download of the page.  ECF Doc. 156-3.  Underhill objects to these costs because under Fla. Stat. § 119.07(4)(d), "the agency may charge, in addition to the actual cost of duplication, a special service charge, which shall be reasonable and shall be based on the cost incurred for such extensive use of information technology resources or the labor cost of the personnel providing the service that is actually incurred by the agency[.]"  Fla. Stat. § 119.07(4)(d).  The undersigned agrees.

In Bear's motion, he states that "it was only through" the use of X1 technology that he was able to obtain a complete response to his public records requests.  ECF Doc. 156 at 3.  Likewise, Bear states that Reyes was hired to "ensure that all public records requested were captured." *Id.*  Because extracting the communications from the Facebook page required "extensive use of information technology resources," Bear would have been responsible for paying the costs even if Underhill complied with the public records request.  Thus, the costs cannot be attributed to Underhill's failure to comply with the PRA, and they cannot be considered "the reasonable costs

of enforcement."    Accordingly, the undersigned finds Bear is not entitled to reimbursement for the $9,825 paid to X1 and Stephen Reyes to download the "Douglas Underhill" Facebook page.[11]

### iii.    Sufficiency of the Fee Application Evidence

Underhill argues Bear cannot recover any attorney's fees related to his unsuccessful § 1983 claims or his claims against Escambia County.  ECF Doc. 157 at 5-6.  Bear, however, is not seeking to recover such fees.  According to the declarations submitted by Bear's attorneys, they reviewed their time records and, to the extent feasible, removed entries that relate solely to the First Amendment claims or the claims against Escambia County.  ECF Doc. 156-1 at 4, 80-81.  Underhill has not pointed to any entry on the itemization provided by Bear's counsel that shows otherwise.

Nevertheless, Underhill claims: (1) he has the right to an itemization of the fees incurred by Bear in his action against the County to ensure there is no duplication between the fees in the two actions; and (2) he has the right to know what fees were billed to Bear for the unsuccessful § 1983 claim.  ECF Doc. 157 at 6.  Neither the Court nor Underhill, however, needs to see bills for fees *not being sought* to determine whether the fees that are being sought are reasonable.  *See Factory Direct Tires, Inc. v. Cooper Tire & Rubber Co.*, 2012 WL 12871827, at *3

---

[11] Bear does not address this argument in his reply.

(N.D. Fla. June 19, 2012) (declining to require party to produce billing records related to activities for which fees were not sought). A fee applicant's declaration should be detailed enough to allow the Court to evaluate whether time is or is not compensable, but there is no requirement that the declaration include time entries related to unsuccessful claims or a list of every time entry for a case. *See* N.D. Fla. Loc. R. 54.1(E)(1) (a fee applicant's "declaration must include sufficient detail to allow the maximum feasible separation of time devoted to matters that are and are not compensable and matters on which the party did and did not prevail").

    In other words, the Court and Underhill can look at the itemized bills for the $130,425.50 being sought here and tell from those entries whether they were for the First Amendment claims, the PRA claims, or were so "inextricably intertwined"[12] that recovery for the entire time spent on a particular task is recoverable. And, as stated above, any concern Underhill has that the liquidated damages provision in Bear's settlement agreement with the ECBCC will entitle Bear to a double recovery of fees has been resolved in the amended settlement agreement, and even if it had not, it is not for this Court to address. For this Court, all that matters is whether the

---

[12] As discussed below, although Bear has submitted a declaration from attorney Charles F. Beall, Jr., attesting that $137,290 in attorney's fees is reasonable, to account for any entries that include work that overlapped both a PRA claim and a non-compensable claim, Bear has voluntarily reduced the $137,290 by 5%, and thus is seeking only $130,425.50.

fees incurred by counsel for prosecuting the PRA claims are reasonable and are for services actually rendered.

Lastly, Underhill argues Bear's motion for fees does not meet the requirements of N.D. Fla. Loc. R. 54.1(E) because Bear's attorneys have refused to provide the invoices sent to their client, claiming there is no requirement they do so and the amounts listed on the invoices are co-mingled with other matters. ECF Doc. 157 at 14. Underhill asserts "[i]nvoices actually sent to, and paid by, parties seeking attorneys' fees are routinely requested and produced as being the best evidence of what was billed to the client." *Id.*

Underhill's argument is meritless, as Bear's attorneys did submit redacted client invoices in support of their fee application. ECF Doc. 156-1 at 6-46, 83-118. And both attorneys' declarations state they billed Bear for the requested hours at the requested rates, and Bear paid all the fees sought in the motion. ECF Doc. 156-1 at 5, 82. Thus, the undersigned finds the evidence Bear submitted in support of his motion for attorney's fees is sufficient and complies with the Court's Local Rules.

### iv.    Amount of Fees

Having resolved all arguments raised by Underhill, the undersigned turns to the amount of attorney's fees requested by Bear. Florida uses the lodestar method to calculate reasonable attorney's fees, which requires courts to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Fla.*

*Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150-51 (Fla. 1985). The resulting figure be increased or decreased based upon a "contingency risk" factor and the "results obtained." *Id.* at 1151.

Underhill appears to agree the hourly rates sought by Bear are reasonable, as he has raised no objections to the rates sought by the attorneys and paralegal performing work on behalf of Bear. *See* N.D. Fla. Loc. R. 54.1(F) ("If the party objects to a timekeeper's claimed hourly rate, the memorandum must set out the rate that the party asserts is reasonable."). Nevertheless, the undersigned has conducted an independent review of the hourly rates and finds they are consistent with or below the rates charged by practitioners with similar experience in this area in similar cases.[13] Thus, the undersigned does not recommend reducing any of the requested rates.

Underhill has also raised no objections to any of the time entries included in Bear's fee application. By failing to do so, Underhill has not met his burden of showing any of the requested time is unreasonable. *See* N.D. Fla. Loc. R. 54.1(F) ("If the party asserts that hours should be reduced or not compensated, the memorandum must identify the hours or otherwise specifically describe the proposed reduction. The memorandum must set out the fee award the party asserts

---

[13] The hourly rates are $225 for Alexandra Akre, $375 for Erik Figlio, $350 for Jeremiah Talbott, $250 for Travis Lampert, $250 for Ryan Stoner, and $125 for Catherine Freeman.

would be reasonable—and by doing so the party will not be deemed to waive the party's objection that fees should not be awarded at all."); *see also Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (In order for courts to determine the appropriate amount of attorney's fees, "'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'") (quoting *Norman*, 836 F.2d at 1301).

This litigation has been pending for several years and involved significant motion practice. Furthermore, while the records contain a few sporadic references to Escambia County and the First Amendment, Bear's reduction of the total amount of fees sought by 5% ($6,864.50) is sufficient to: (1) account for time spent on otherwise non-compensable activities that is inextricably intertwined with compensable time; and (2) account for any redundancies or inefficiencies associated with the use of multiple attorneys. ECF Doc. 156 at 2-3. The undersigned finds Bear's motion should be granted to the extent he should receive $130,425.50 in attorney's fees.

Accordingly, it is RECOMMENDED:

1.     That Bear's motion for attorney's fees, ECF Doc. 156, be GRANTED to the extent Bear be awarded $130,425.50 in attorney's fees.

2      That Underhill's motion to remand, or in the alternative, motion for reconsideration, ECF Doc. 158, be DENIED.

At Pensacola, Florida, this 13th day of July, 2023.

_/s/ Hope Thai Cannon_

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.